938 P.2d 1110

**Anthony Allan HOLMBERG, Petitioner,**

v.

**Hon. Armando De LEON, Judge of the Superior Court of the State of Arizona, in and for the County of Maricopa, Respondent Judge,**

**STATE of Arizona, ex rel. Richard ROMLEY, Maricopa County Attorney, Real Party in Interest.**

**No. CV–97–0017–PR.**

Supreme Court of Arizona, En Banc.

May 22, 1997.

Richard M. Romley, Maricopa County Attorney, Phoenix by Diane E.W. Gunnels, Deputy County Attorney, for State of Arizona.

Dean W. Trebesch, Maricopa County Public Defender, Phoenix by Darius M. Nickerson, Nancy E. Hines, Deputy Public Defenders, for Anthony Allan Holmberg.

## OPINION

MARTONE, Justice.

Rule 15.1(g)(1), Ariz. R.Crim. P., requires a prosecutor to provide the defendant notice of intent to seek the death penalty "no later than 30 days after the arraignment in superior court." The question before us is whether notice given one year and three months after the arraignment is a particularly egregious violation of the rule. We hold that it is.

### I. Background

Anthony Allan Holmberg was indicted on two counts of child abuse and one count of first degree murder on January 27, 1995. He was arraigned in superior court on May 11, 1995. One year and three months later, on August 12, 1996, the state filed its notice of intent to seek the death penalty. On August 19, 1996, Holmberg filed a motion to strike the state's notice for the reason that it violated Rule 15.1(g)(1), Ariz. R.Crim. P. In response, the state argued that Holmberg failed to show any prejudice flowing from the state's violation. In his reply, Holmberg argued that he was prejudiced by the state's violation "because the preparation of a capital case is entirely different from any other type of case not only in preparation for trial but also in preparation to protect Mr. Holmberg's interests from what may happen after trial." Holmberg's reply, Sept. 9, 1996, at 4–5. The trial court denied the motion for the reason that Holmberg "failed to show where he has been prejudiced by the delay." Minute Entry of Sept. 11, 1996.

Holmberg filed a petition for special action in the court of appeals, which declined to accept jurisdiction. We granted Holmberg's petition for review because the question presented has significant implications for capital litigation in Arizona. Rule 8(b), Ariz. R.P. Sp. Act.; Rule 23(c)(4), Ariz. R. Civ.App. P.

### II. Analysis

A decision to seek the death penalty requires careful and thoughtful consideration of our death penalty statute, A.R.S. § 13–703, our cases construing it, and all evidence relevant to aggravating and mitigating circumstances. A decision to seek the death penalty sets in motion a series of significant effects. The county is put on notice that it will have to bear the expense not only of prosecuting such a case but also the significant expense of defense fees, expert witness fees, and other extraordinary expenses. A.R.S. § 13–4013. The county (or court) will have to select counsel who are qualified to defend capital cases and ensure that they have both the time and resources to do their job. This will frequently require more than one lawyer.

The court, too, is affected. A capital case may require a special assignment to avoid the disruptive effect such a case may have on an ordinary criminal calendar. The court may marshal the resources of law clerks or other assistants to help the assigned judge to deal with the unique problems associated with capital litigation. Arizona judges may receive research and judicial support in capital cases through the Arizona Capital Litigation Law Clerk Assistance Program.

The decision, too, will have a profound effect on the defendant. It may influence plea negotiations. It will affect the evidence offered or not offered. It will require the gathering of evidence relevant to aggravation and mitigation, which in turn may require the services of investigators and expert witnesses.

The prosecutor is also affected. A decision to seek the death penalty ensures that, if actually imposed, the future course of the case will be characterized by the layered complexity of both state and federal post-conviction proceedings. And, given the pros-

ecutor's special responsibility as a minister of justice and not simply an advocate, ER 3.8, Rule 42, Ariz. R. Sup.Ct., the decision cannot be undertaken lightly.

Our legislature has already acknowledged the complexities associated with the defense of capital cases and has required this court to establish and maintain a list of qualified lawyers to be appointed in post-conviction proceedings in capital cases. *See* A.R.S. § 13–4041. Pending before this court is a proposal to amend the rules of criminal procedure to require the appointment of two lawyers who meet certain standards to represent the defendant in a capital case. In such a regime, the notice of intent to seek the death penalty becomes even more important. *See In re petition to amend Rule 6.2 and to adopt Rule 6.8(b), Ariz. R.Crim. P.*, Supreme Court No. R–96–0031.

It is against this backdrop that Rule 15.1(g)(1), Ariz. R.Crim. P., was adopted. By requiring notice of intent to seek the death penalty no later than thirty days after arraignment, all of these wheels are set in motion at the outset. It alerts all the participants to the special needs involved in the trial of a capital case.

Rule 15.1(g)(1) has been the subject of three of our recent opinions. In *State v. Lee*, 185 Ariz. 549, 555, 917 P.2d 692, 698 (1996), we upheld the denial of a motion to preclude the state from seeking the death penalty where the state filed its written notice eighty-seven days late, because it was undisputed that the defendant had actual oral notice as evidenced by discussions during plea negotiations and defense counsel's contacts with death penalty lawyers throughout Arizona. We said that a defendant seeking to demonstrate an abuse of discretion "should be prepared to show some prejudice from surprise or delay." *Id.* at 556, 917 P.2d at 699.

In *State v. Jackson*, 186 Ariz. 20, 24, 918 P.2d 1038, 1042 (1996), we again found no abuse of discretion where the trial court allowed the state to file its notice one day late because it was clear that the defendant had actual notice of the prosecutor's intent to seek the death penalty at least one week before the state's notice was due. We also

squarely rejected the defendant's argument that strict compliance with Rule 15.1(g)(1) was jurisdictional. *Id.*

In *Barrs v. Wilkinson*, 186 Ariz. 514, 516, 924 P.2d 1033, 1035 (1996), we concluded that the trial court erred in failing to grant the defendant an evidentiary hearing on his request to show prejudice from a notice that was nearly three months late. Counsel argued that he would have to withdraw because he had already reached his contractual quota of capital cases. He further argued that had timely notice been given, a different lawyer could have been assigned and important early decisions could have been made. We concluded that the defendant had made a colorable claim of prejudice and was entitled to an evidentiary hearing. We acknowledged that a continuance may well be the appropriate remedy for a Rule 15.1(g)(1) violation but that preclusion of the death penalty "may be appropriate where, for instance, the state's violation is particularly egregious or the defendant will clearly suffer harm." *Id.* at 516, 924 P.2d at 1035. We noted that *Barrs* was not a case, like *Lee* or *Jackson*, in which the notice was filed a few days late or the defendant had actual notice of the state's intent within the prescribed time limit. For months the defendant, his lawyer, and the office of court-appointed counsel reasonably believed it was a non-capital case. We did, however, reject the argument that the state should be automatically precluded from seeking a death sentence where it fails to show good cause for the violation, and instead remanded for an evidentiary hearing on the question of prejudice and harm.

Holmberg argues that the trial court's ruling here was an abuse of discretion because unlike *Lee* and *Jackson*, he had no actual notice of the state's intent to seek the death penalty before the prescribed period expired. He contends that allowing the state to notify him of its intent to seek the death penalty one year and three months after arraignment violates not only the plain language of the rule but its purpose.

The state argues that there was no prejudice here because it filed its notice in August 1996, the firm trial date was reset to March

1997, and has again been reset to May 1997. State's Response to Petition for Review at 7. The state further informs us that the reason for the extraordinary delay in this case is that the deputy assigned to the case "had never been assigned a death penalty case before," and "she was simply unaware of the proper procedures for notice to be followed in a death penalty case." *Id.* at 12.

Our review of the record indicates that this is the "particularly egregious" case we referred to in *Barrs*, 186 Ariz. at 516, 924 P.2d at 1035. By August 6, 1996, the parties had engaged in extensive discovery, had filed their disclosure statements, their witness and exhibit lists, and because discovery was still ongoing, the trial court continued the trial from August 6, 1996, to August 30, 1996. Minute Entry of Aug. 6, 1996. Six days later and in the face of an August 30 trial date, the state filed its notice of intention to seek the death penalty. The defendant promptly filed his motion to strike the state's notice on August 19, 1996. The state filed its response on the trial day, August 30, 1996, and on that same day the trial court ordered the defendant to file a reply to the state's response and continued the trial to October 4, 1996. Minute Entry of Aug. 30, 1996. The defendant filed his reply on September 9, 1996, and on September 11, 1996, the trial court denied the defendant's motion to strike. Up to this point, Holmberg was represented by a single public defender. On September 23, 1996, just a week and a half before trial, a second public defender filed a notice of appearance as co-counsel for Holmberg. Four days before trial, the defendant filed a motion for stay of proceedings so that he could seek special action relief from the denial of his motion to strike the state's notice of intention to seek the death penalty. On October 4, 1996, the trial court denied the motion for stay and reset the trial to March 3, 1997. On January 24, 1997, Holmberg moved to continue the trial from March 3, 1997, to May 5, 1997, for, among other reasons, the need for newly added co-counsel "to pursue the area of mitigation." Motion to Continue dated Jan. 24, 1997 at 2. On February 7, 1997, the trial court continued the trial to May 21, 1997. Minute Entry of Feb. 7, 1997.

This is plainly not a case, as is suggested by the state, where a notice of intent to seek the death penalty was filed late but at least six months before trial. This notice was filed eighteen days before the trial date. It is also a case in which the trial court denied the defendant's motion to strike the notice twenty-three days before the reset trial date. Although the trial court, on October 4, 1996, reset the trial to March 3, 1997, by then the damage had been done. The parties had been engaged in extensive discovery, no mention had been made of the death penalty, defense counsel had no reason to develop evidence that would mitigate a death penalty, no reason to obtain co-counsel until it was too late, and by the time the trial was reset to March 1997, giving the defendant about five months, the parties had endured sixteen separate trial continuances.

This is not a case in which the state discovered aggravating circumstances during trial preparation, which would make it appropriate to seek leave to file a tardy notice. Instead, this case was characterized by the state as a "capital offense" at the proceedings on the return of the indictment on January 27, 1995. Tr., Jan. 27, 1995, at 40.

The filing of a notice of intent to seek the death penalty cannot be a fifteen-month afterthought. This would completely eviscerate the purpose sought to be achieved by the rule. The parties, the lawyers, the court, and all others must know that it is a death case from the outset.

We reject as categorically as we can the state's suggestion that

> if untimely notices of intention to seek the death penalty are to be dismissed without any showing of prejudice to the defense, Arizona prosecutors will reason, "Better safe than sorry" and routinely file notices of intent to seek the death penalty as part of every first degree murder case.... If this Court determines that the defense need not show prejudice to have an untimely notice dismissed, the consequence will be that the State will file many more notices of intent to seek the death penalty, and ultimately withdraw most of those notices.

State's Response to Petition for Review at 9–10. We do not believe that Arizona prosecutors would so lightly disregard the special responsibilities imposed upon them under ER 3.8 as ministers of justice. Indeed, in our experience, we believe that this argument is not fairly reflective of the professionalism the vast majority of prosecutors show day in and day out. No prosecutor should ever file a notice of intent to seek the death penalty unless in earnest, after the most careful and deliberative consideration of the evidence and law. The filing of the notice of intent to seek the death penalty should set into motion all the machinery we have detailed in this opinion.

If a substantial violation of the notice rule right through the end of the process could be cured by the expedient of a trial continuance, then the purpose sought to be achieved by the rule would be frustrated. The prejudice to the defendant and to the system would be apparent. This is the "particularly egregious" case in which we can say with confidence that the system has not worked as it should, and as it must. *Barrs*, 186 Ariz. at 516, 924 P.2d at 1035. This case was prepared for trial as a non-capital case. This is thus not a case of presumed prejudice, but actual prejudice to the defendant and the administration of justice.

### III. Conclusion

We vacate the order of the trial court which denied the defendant's motion to strike the state's notice of intent to seek the death penalty and remand this case to the superior court with instructions to grant the motion and proceed to trial.

ZLAKET, C.J., JONES, V.C.J., and FELDMAN and MOELLER, JJ., concur.