982 P.2d 819

**STATE of Arizona, Appellee,**

v.

**Michael Ray WHITE, Appellant.**

**No. CR–96–0716–AP.**

Supreme Court of Arizona,
En Banc.

June 10, 1999.

Janet A. Napolitano, Attorney General, by Paul J. McMurdie, Chief Counsel Criminal Appeals Section R., Phoenix, Wayne Ford, Assistant Attorney General, Attorneys for Appellee.

J. Douglas McVay, Phoenix, Attorney for Appellant.

## OPINION

JONES, Vice Chief Justice.

¶1 A jury convicted the defendant Michael Ray White of first degree murder and conspiracy to commit first degree murder. The trial court sentenced White to life without possibility of parole for twenty-five years for the conspiracy and imposed the death penalty for the first degree murder. On appeal, both convictions were affirmed by this court. *See State v. White*, 168 Ariz. 500, 815 P.2d 869 (1991), *cert. denied*, 502 U.S. 1105, 112 S.Ct. 1199, 117 L.Ed.2d 439 (1992) (*White I* ).

¶2 In 1992, defendant petitioned for post-conviction relief to obtain either a new trial or resentencing. In 1995, he filed an amended petition. The trial court granted White a new sentencing on grounds of ineffective assistance of counsel during the initial sentencing proceedings. On resentencing, the defendant once again was given a life sentence without possibility of parole for twenty-five years for conspiracy and the death sentence for first degree murder.

¶3 This is a mandatory appeal from a death sentence pursuant to Rules 26.15 and 31.2, Arizona Rules of Criminal Procedure. We have jurisdiction pursuant to article VI, section 5(3), of the Arizona Constitution and A.R.S. sections 13–4031 and 13–4033(A).

## FACTS

¶4 The operative facts of the crime are not in dispute.[1] At approximately 11 p.m. on December 12, 1987, neighbors of David and Susan Johnson (David and Susan) heard gunshots at the Johnson residence in Bagdad, Arizona. Neighbors saw a man run from the residence, enter a green car, and speed away. Within a short time, a bleeding David walked to a neighbor's home, where he collapsed. He had been shot in the chin and in the back with a .357 magnum revolver. Before dying, David told various persons that a man wearing a mask shot him. Susan told police and other witnesses that her ex-husband, Clifford Minter, shot David. Susan allegedly obtained this information from David before he died and was apparently the only person to make the identification. The description of the green car and the name, Clifford Minter, were broadcast over the police radio.

¶5 An officer on his way to the crime scene spotted the green vehicle driving out of Bagdad and stopped it. Defendant was the sole occupant. Defendant explained that he had just dropped off a companion and was on his way home. Because the police broadcast named Clifford Minter as the suspect, the officer did not detain the defendant.

¶6 The police investigation soon disclosed· that Minter was not involved in the shooting. Accordingly, the inquiry focused on the defendant and Susan. Police learned that defendant met Susan in January 1987,

---

1. The facts and procedural history are taken from this court's decision in *State v. White*, 168 Ariz. 500, 815 P.2d 869 (1991) (*White I* ).

when the two worked at a nursing home in Prescott, Arizona. In April 1987, the couple went to Michigan and worked together in a nursing home. Susan returned to Prescott the following October and married David on November 20. Defendant also returned and, despite Susan's marriage, resumed intimate relations with her. Defendant later told several persons that Susan had asked him to kill David.

¶ 7 Significantly, the investigation revealed Susan's successful effort to obtain a life insurance policy on David with term coverage of $50,000 and whole life coverage of $15,000, a combined face value of $65,000. The policy was dated November 25, 1987, seventeen days before the murder. Susan was the named beneficiary. The record also reveals a change of beneficiary in David's existing employee group life insurance. Susan obtained the change form from the employer, Cypress Mines, on December 7, 1987 and returned it, fully executed, on December 10, two days before the crime occurred. The change form added Susan's name and the names of her children as beneficiaries.

¶ 8 Additionally, defendant assured his ex-wife, Becky Fisher, that he would pay past due child support obligations because he was soon going to receive $100,000. Defendant also advised his ex-wife that Susan had initiated dissolution proceedings against David and that the settlement money she received would be used to put defendant through medical school.

¶ 9 The police learned that defendant made a down payment on a revolver at a Prescott pawn shop November 19, 1987. He later made another payment and picked up the revolver. After David was shot, defendant sold the revolver to a Phoenix pawn shop. The same revolver was later recovered and identified as the weapon used to kill David. Defendant's car was also identified as the green Oldsmobile driven from the murder scene.

¶ 10 Defendant was arrested in Phoenix December 19, 1987. Police searched the car and found a box of .38 caliber bullets, a ski mask, and a bag of potatoes. At the time of the shooting, the killer had apparently forced a potato over the barrel of the revolver to act as a silencer. Pieces of dried potato were found at the crime scene, and potato starch was found on the gun barrel.

## PROCEDURAL HISTORY

¶ 11 Defendant's trial was severed from Susan's. At trial, defendant claimed that Susan killed David. The jury nevertheless convicted defendant on both the conspiracy and murder counts. At the presentencing hearing, the state argued that the crime was motivated by defendant's intent to benefit from the insurance proceeds on the victim's life. Defendant presented no evidence of mitigation but merely argued that the absence of a prior criminal record was a mitigating circumstance.

¶ 12 Defense counsel argued, unsuccessfully, that the evidence did not establish that defendant's involvement in the killing was for financial gain. Rather, defendant acted out of love or infatuation for Susan. By reason of the pecuniary gain factor, the court imposed a capital sentence for David's murder. See A.R.S. § 13–703(F)(5).

¶ 13 At the resentencing hearing in August 1996, the prosecution offered no new evidence of aggravation. Defendant, however, presented the testimony of Marc Hammond, an attorney who prosecuted the first trial and sentencing. Hammond's testimony reflected his belief that the state should not have sought the death penalty in White's case because Johnson's slaying was a "run of the mill" murder. Hammond believed that the death penalty should be reserved for more egregious cases. Hammond's co-counsel, Jill Lynch, held the same view.

¶ 14 In its special verdict, the trial court again found one aggravating factor, pecuniary gain. A.R.S. § 13–703(F)(5). Defendant urged no statutory mitigating factors and, accordingly, none were found to exist. Nonstatutory mitigating factors urged by defendant were considered and, as at the initial sentencing, were found insufficient to justify a reduction in the capital sentence. The trial court considered all factors before issuing its verdict.

¶ 15 In addition to the factors reviewed and weighed in *White I*, the court gave consideration to the following new arguments:

1. That Marc E. Hammond, the original prosecutor, believed [at the time] that it was not an appropriate case for the imposition of the death penalty, that it was a "run of the mill" murder case.

2. That Jill Lynch, co-counsel with Marc Hammond, also shared the opinion that the death penalty was not appropriate.

3. That the death sentence for the defendant and two consecutive life sentences for his codefendant, Susan Johnson, constitutes a result that is fundamentally unfair, inappropriately disparate and a denial of equal protection.

4. That the defendant's behavior was "aberrant" given the absence of a prior felony record.

5. That intervening acts of medical personnel at the Bagdad clinic caused David Johnson's death and are thus circumstances that can be considered in mitigation.[2]

6. That defendant's sentence should be reduced to time served.

In his special verdict, the trial judge observed:

I have reviewed all of the facts of this case to find mitigating circumstances which might weigh in your favor. I have considered each and every fact raised by you not only in your sentencing memorandum but also in your Petition for Post Conviction Relief. I have reviewed my previous sentencing order in this case. I have again considered whether the sentence of your co-defendant and your sentence was fundamentally unfair, inappropriately disparate and a denial of equal protection. I have taken into consideration Mr. Lockwood's testimony that he did not provide you with effective assistance during the trial of this case. I have reviewed your request that your sentence be reduced to time served. I have considered every fact in mitigation to determine whether any are sufficiently substantial to call for leniency.

¶ 16 The court concluded that the evidence and various arguments offered by the defendant in support of a mitigated sentence were insufficient to overcome the substantial weight of contrary evidence that the murder was motivated by the expectation of pecuniary gain. Accordingly, Judge Hancock reimposed the death penalty.

## DISCUSSION

### A. The Aggravating Circumstance—Pecuniary Gain

■ ¶ 17 Our view, expressed in *White I*, remains unchanged. The record presents clear and forceful evidence of defendant's involvement in a calculated scheme to take the life of David Johnson in order to achieve pecuniary gain. We conclude, from the totality of evidence, that except for defendant's anticipation of a substantial life insurance payout, he would not have killed the victim. Had his interest been nonpecuniary, focused solely on an infatuation with Susan as claimed, defendant could have achieved his stated goal simply by awaiting completion of a divorce proceeding between Susan and David. But to do so was not part of the plan, and the marriage had taken place a mere three weeks earlier. The clear impetus behind the murder, in light of all the facts, was the expectation of quick financial gain. The record contains nothing of consequence to refute this conclusion. Accordingly, we turn to an analysis of proffered nonstatutory mitigating factors.

### B. Nonstatutory Mitigating Factors

■ ¶ 18 Though no statutory mitigating factors are present on this record, the sentencer must nonetheless consider nonstatutory mitigators, including any aspect of the defendant's character or any circumstance of the offense relevant to determining whether a capital sentence is too severe. *See* A.R.S. § 13–703(G), *Lockett v. Ohio*, 438 U.S. 586, 604, 98 S.Ct. 2954, 57 L.Ed.2d 973 (1978);

---

**2.** Dr. Keen, the medical examiner who performed the autopsy on David Johnson, submitted an affidavit stating, in effect, that the gunshot wounds inflicted on David were not, of themselves, fatal.

*State v. Lopez*, 175 Ariz. 407, 414, 857 P.2d 1261, 1268 (1993); *State v. Bible*, 175 Ariz. 549, 605, 858 P.2d 1152, 1208 (1993); *State v. Salazar*, 173 Ariz. 399, 412, 844 P.2d 566, 579 (1992). The defendant carries the burden of proving the existence of statutory and non-statutory mitigators by a preponderance of the evidence. *State v. Gonzales*, 181 Ariz. 502, 513, 892 P.2d 838, 849 (1995) (citing *State v. Kiles*, 175 Ariz. 358, 373, 857 P.2d 1212, 1227 (1993)). In order to satisfy this burden, the defendant must present affirmative evidence. *See State v. McMurtrey* (*McMurtrey II*), 143 Ariz. 71, 72, 691 P.2d 1099, 1100 (1984) (citing *State v. Greenawalt*, 128 Ariz. 150, 173, 624 P.2d 828, 851 (1981)).

¶ 19 The trial court applies a two-pronged test to decide the influence of mitigating factors. First, it must determine whether the defendant has proved the existence of the factor by a preponderance of the evidence. *See State v. Ramirez*, 178 Ariz. 116, 131–32, 871 P.2d 237, 252–53 (1994). Once established, the court then considers whether the factor is in any way mitigating. *Id.* If the trial court finds that the defendant has carried the burden and that a factor is mitigating, such factor must be weighed against the aggravating factor or factors to determine whether the evidence of mitigation is sufficient to warrant leniency in sentencing. *See McMurtrey II*, 143 Ariz. at 73, 691 P.2d at 1101 (citing *State v. Gretzler*, 135 Ariz. 42, 54, 659 P.2d 1, 13 (1983)). If more than one mitigating factor is found, such factors are weighed both separately and cumulatively against the evidence of aggravation. In the instant case, the court weighs such mitigating evidence as may exist against the single aggravator of pecuniary gain. No other aggravation was proved.

### 1. Prosecutor's recommendation against death penalty

¶ 20 Defendant argues that the trial court erred in failing to accept as a nonstatutory mitigating factor the prosecutor's belief that on this record the death penalty was inappropriate. Defendant claims that Hammond's testimony, that this was a "run of the mill" murder, was relevant evidence and should have been considered and weighed, especially in light of *State v. Gallegos*, 178 Ariz. 1, 870 P.2d 1097 (1994). *Gallegos* holds that "a recommendation of leniency from authorities who are intimately involved in a case carries significant weight and may constitute a mitigating circumstance." *Id.* at 20, 870 P.2d at 1116.

¶ 21 Other instances in which we have allowed recommendations for leniency by authorities as mitigating factors include *State v. Lee*, 185 Ariz. 549, 556, 917 P.2d 692, 699 (1996) (sentencer considered prosecutor's recommendation against death penalty as mitigating factor), and *State v. Rockwell*, 161 Ariz. 5, 15–16, 775 P.2d 1069, 1079–80 (1989) (in weighing mitigating factors, court considered probation officer's presentence report recommending against death penalty).

¶ 22 In his special verdict in the case at bar, Judge Hancock states:

The opinion of Marc Hammond is irrelevant, carries no weight and is not a fact in this case supporting a mitigating circumstance. The opinion of Jill Lynch is equally irrelevant.

¶ 23 The defendant is correct that Judge Hancock's statement is inconsistent with prevailing authority. The prosecutor's opinion is relevant and should have been considered by the trial judge. But the opinions of Hammond and Lynch were merely opinions. We have independently weighed these statements as factors of mitigation, both separately and cumulatively, and conclude they are easily outdistanced by White's and Susan Johnson's premeditated scheme to murder David Johnson and thereby reap the benefits of his life insurance. This is an expectation of pecuniary gain in the most classic sense. It is akin to murder for hire.

¶ 24 We reaffirm the principle that a recommendation for leniency given by authorities intimately connected with the case should be considered by the sentencer as a nonstatutory mitigating factor, and we are mindful of the argument by our dissenting colleagues on this point, but in our view the financial gain factor on this record is so abundantly clear and forceful that the opinion of the prosecutor is grossly insufficient to warrant a change in sentence under A.R.S.

§ 13–703.01 (Supp.1998). See *State v. Summerlin,* 138 Ariz. 426, 435–36, 675 P.2d 686, 695–96 (1983) (dismissing the argument that the weighing process results in unconstitutionally arbitrary and capricious results).

### 2. Possibility of rehabilitation

■ ¶ 25 In his sentencing memorandum, the defendant asserts capability of rehabilitation within the limits of a life sentence in prison, citing the mitigating factor "ability to be rehabilitated," as outlined in *State v. Rossi,* 154 Ariz. 245, 249, 741 P.2d 1223, 1227 (1987). The defendant argues the trial court should have found potential for rehabilitation as a significant mitigating circumstance.

■ ¶ 26 We agree that Arizona recognizes the potential for rehabilitation as a mitigating factor. *See id.,* 154 Ariz. at 249, 741 P.2d at 1227; *State v. Schad,* 163 Ariz. 411, 421, 788 P.2d 1162, 1172 (1989). There appears no clear test under Arizona law as to how a defendant might demonstrate ability to be rehabilitated. In cases in which this court has substantively discussed the rehabilitation factor, defendants have offered evidence of potential for rehabilitation in the form of expert testimony. *See Rossi,* 154 Ariz. at 249, 741 P.2d at 1227; *State v. Jones,* 185 Ariz. 471, 491, 917 P.2d 200, 220 (1996); *State v. Stokley,* 182 Ariz. 505, 524, 898 P.2d 454, 473 (1995); *State v. King,* 180 Ariz. 268, 284, 883 P.2d 1024, 1040 (1994). None was offered here. Defendant's own testimony is not sufficient. *See State v. Medrano,* 185 Ariz. 192, 194, 914 P.2d 225, 227 (1996)("Because of the obvious motive to fabricate, ... self-serving testimony is subject to skepticism and may be deemed insufficient to establish mitigation."). Judge Hancock considered defendant's testimony on the potential for rehabilitation and found it to be insufficient to carry the burden of proof. We, too, have considered the defendant's testimony and find no reason to disturb Judge Hancock's finding. The defendant thus fails to establish the factor by a preponderance of the evidence.

### 3. Participation in the crime as aberrant behavior

■ ¶ 27 Defendant requested that the trial court find, as mitigation, that the killing of David Johnson was "aberrant behavior." As affirmative evidence on this point, defendant pointed to the lack of a prior felony record or any record of abusive or violent behavior. While the absence of such a record may, of itself, be mitigating, and indeed was separately considered by the trial court in both defendant's sentencings, it does not fall with the definition of aberrant behavior. Defendant also now relies on the following facts as found by the trial court during the resentencing proceedings: (1) no difficulties since his confinement and his attempts to be a model prisoner; (2) re-establishment of contact with his children and assistance to his daughter Isabel; (3) acceptance that his remaining life will be spent in prison and that even in prison his life has value.

¶ 28 The "aberrant behavior" concept, created by the Ninth Circuit as an exception to federal sentencing guidelines, is intended to deal with what that Circuit views as an inflexible sentencing scheme under United States sentencing guidelines which are viewed as too rigid to take into account situations where a lesser penalty seems more appropriate. The doctrine has been applied in cases that would result in a fundamentally unfair sentence, but not in a capital case. *See United States v. Green,* 105 F.3d 1321, 1322–23 (9th Cir.1997) (no aberrant behavior where defendant's drug operation motivated by greed; absence of a prior criminal record insufficient to mitigate sentence); *United States v. Lam,* 20 F.3d 999, 1003–05 (9th Cir.1994) (aberrant behavior found where recent robbery and concern for family's safety prompted defendant to purchase illegal gun); *United States v. Fairless,* 975 F.2d 664, 667–68 (9th Cir.1992) (aberrant behavior found where defendant motivated not by greed, but to help family); *United States v. Takai,* 941 F.2d 738, 740–41 (9th Cir.1991) (aberrant behavior found where after consulting lawyer, defendant withdrew from crime so far as he would receive any personal benefit). The federal cases indicate that even were we to accept this as a mitigator, defendant's behavior in the instant case would not qualify as "aberrant behavior" for purposes of nonstatutory mitigation.

¶ 29 The observations in *Green* apply here with equal force:

> One could search this record in vain to find any particular extenuating circumstances, other than Green's lack of a prior criminal record, and we long ago concluded that an absence of criminal history is not synonymous with aberrant behavior. *Takai*, 941 F.2d at 743. Criminal history is already taken into account by the Sentencing Guidelines.... Green's marijuana operation was significant and well-planned; no rationale for the behavior was proffered other than the money Green and his codefendant planned to share.... Therefore, on this record it does not seem that there were any mitigating circumstances not fully taken into account by the Guidelines.

*Green*, 105 F.3d 1321, 1323 (emphasis added) (footnote omitted).

¶ 30 There is no Arizona authority for "aberrant behavior" as a mitigating factor, and we decline to adopt the doctrine on the facts of this case.

### 4. Disparate sentence imposed on a co-defendant

 ¶ 31 Defendant argues that although this argument was raised and rejected in *White I*, new facts support its reassertion, including Hammond's testimony (and the testimony of one of Susan's own lawyers) that Susan Johnson was the mastermind of the killing and defendant was her dupe.

 ¶ 32 Unexplained disparity between the sentences of a defendant and codefendant may be a mitigating factor in a capital case. *See State v. Hyde*, 186 Ariz. 252, 283, 921 P.2d 655, 686 (1996); *State v. Stokley*, 182 Ariz. 505, 523, 898 P.2d 454, 472 (1995); *State v. Schurz*, 176 Ariz. 46, 57, 859 P.2d 156, 167 (1993). Where the defendant commits the killing, i.e., actually pulls the trigger, the disparity in sentences as between coconspirators is explained. *See State v. Mann*, 188 Ariz. 220, 230, 934 P.2d 784, 794 (1997); *State v. (Michael) Apelt*, 176 Ariz. 349, 368, 861 P.2d 634, 653 (1993). This is the second time the court has looked at this issue in the instant case. We stated previously:

> [T]he record establishes a rational basis for the different penalties in this case. The trial judge found that defendant committed the actual killing of David. He also found no mitigating factors sufficient to warrant leniency for defendant. The court, however, did find mitigating factors sufficient to warrant leniency for Susan (no prior criminal record, kind and caring mother, death sentence would be devastating to her six-year-old daughter, potential for violence was minimal, difficult childhood, difficult marriage to Clifford Minter followed by a difficult dissolution). Moreover, the jury foreman wrote to the trial judge following the trial advising him that all twelve jurors recommended leniency for Susan.

*White I*, 168 Ariz. at 513–14, 815 P.2d at 882–83.

¶ 33 White argues that several common factors militate against disparate sentencing: both he and Susan planned the killing; neither had a prior felony record; imposition of capital punishment would be devastating to children of both; neither has a record of violence; both had a difficult childhood; there is no difference as to culpability; the same aggravator (pecuniary gain) applies to both; and the mitigators are similar. Further, White asserts that the trial court failed to explain the disparity in sentences and took no account of the argument that Susan was the mastermind behind the killing.

¶ 34 Little has changed since our decision in *White I*. The nucleus of the new evidence is Hammond's testimony that Susan Johnson was the mastermind. While there are similarities in the evidence as between the defendant and Susan, we agree with Judge Hancock's consideration of the disparate sentence issue. In the Special Verdict, he stated:

> On the issue of disparate sentences, Mr. White conveniently forgets that he was the triggerman and that he planned, plotted, and executed this killing.
>
> . . .
>
> I have again considered whether the sentence of your codefendant and your sentence was [sic] fundamentally unfair,

inappropriately disparate and a denial of equal protection.

Judge Hancock found defendant's disparate treatment argument insufficient as mitigation, as do we. In *State v. Jackson,* we held that if disparity in sentences is justified by relative culpability, it receives little, if any weight. 186 Ariz. 20, 32, 918 P.2d 1038, 1050 (1996). We find that to be true here as well.

¶ 35 Accordingly, we conclude that defendant has presented nothing new that would justify a different posture by the court on the matter of disparate sentencing. Indeed, nothing of substance has changed.

## C. Constitutional Arguments

### 1. Disparate sentence as gender discrimination in violation of Equal Protection under the Fourteenth Amendment

¶ 36 Defendant acknowledges that this issue was raised in his first appeal and decided by this court in *White I.* He nevertheless argues that "new facts adduced at the hearings held in this matter in the post-conviction relief proceedings require that the claim be renewed." He argues that the trial court violated the Equal Protection clause of the Fourteenth Amendment by sentencing him to death and his codefendant to two consecutive terms of 25 years each (essentially a fifty-year sentence). While the mitigation statute is facially neutral on the question of gender, defendant contends the trial court's findings as to him, compared to the findings as to Susan, are not neutral. He relies on Hammond's testimony that he and Susan were similarly culpable and that the mitigation factors found to exist were equal. Defendant claims that gender is therefore the only reason that Susan's mitigating factors resulted in a life sentence, while his mitigating factors left him death eligible.

¶ 37 To establish the claim, defendant points directly to the findings at his resentencing that he had re-established contact with his children and had been able to help one of them, making him the equivalent of a "caring father." The trial court in Susan's case found that she was a "caring mother" and used that finding, along with the devas-

tation to her children should she be put to death, as two of six mitigating factors. Defendant claims that failure to find that he was a "good and caring father" and that his death would be devastating to his daughter denied him equal protection when the trial court found the same facts as mitigating circumstances for Susan Johnson. We disagree.

¶ 38 The issue the defendant raises is whether he is a member of a recognizable class, singled out by law or by practice for distinctive treatment without a rational basis. *See Marshall v. United States,* 414 U.S. 417, 421–27, 94 S.Ct. 700, 38 L.Ed.2d 618 (1974). In *White I* we quoted *State v. Maloney,* 105 Ariz. 348, 354, 464 P.2d 793, 799 (1970):

¶ 39 Equal protection of the laws here means only that the death penalty may be applied to all persons in the State in a like position. And, in Arizona, all persons charged with murder in the first degree face possible imposition of the extreme penalty. Equality of treatment does not destroy individualization of sentencing to fit the crime and the individual. Persons convicted of the same crime can constitutionally be given different sentences.

168 Ariz. at 514, 815 P.2d at 883. In comparison, the defendant and Susan were not similarly situated for the clear reason that White alone pulled the trigger that resulted in David Johnson's death.

¶ 40 Moreover, Judge Hancock's review of the evidence did not lead to a finding that White is a "caring father." Arizona law offers no clear test establishing the requirements of a "caring father" (or "caring mother"). *See State v. West,* 176 Ariz. 432, 451, 862 P.2d 192, 211 (1993) (rejecting claim that defendant's contact with small child was mitigating factor where contact was minimal); *State v. Stanley,* 167 Ariz. 519, 529–30, 809 P.2d 944 (1991) (trial court found defendant an "adequate family man" as one of five mitigating factors; not sufficient to justify leniency). Renewing contact and helping his daughter from prison is not the equivalent of "caring father." His own testimony demonstrates that of his six children he had no contact or association with the three young-

est and of the other three he had very limited contact.

¶ 41 We decline to hold that White's sentence is a violation of equal protection. Evidence justifying disparate treatment, for reasons other than gender, is clear on this record.

### 2. Yavapai County's Prosecutorial Policy

¶ 42 The Yavapai County Attorney's Office, as a matter of policy, seeks the death penalty in each case of first degree murder in which at least one aggravating factor exists. Traditionally, the prosecutor makes the initial choice whether capital punishment is appropriate and whether to seek it. It would be inappropriate for this court to encroach on reasonable prosecutorial discretion, absent a clear indication of misconduct. Any one or more aggravating factors may warrant the death penalty as a matter of law. The actual sentencing decision, of course, resides with the court as part of the judicial process, and though the prosecutor may request the death penalty, the court is constitutionally required to weigh the evidence independently and to disagree with counsel whenever appropriate. The judicial process, whereby the aggravators and mitigators are analyzed and evaluated, normally provides ample protection against overreaching counsel.

¶ 43 In addition, defendant now claims for the first time that the prosecutorial policy violates the Eighth and Fourteenth Amendments to the U.S. Constitution and art. II, sections 4, 15, and 24 of the Arizona Constitution on the basis that it impairs individual prosecutorial discretion, required by Arizona's death penalty scheme. *See* Ariz. R.Crim. P. 15.1(g). We disagree for reasons heretofore stated. But assuming, *arguendo,* that the defendant's argument has merit, he knew of the policy and failed to raise this argument at his sentencing hearing. Neither did he raise it during proceedings for post-conviction relief. He raises it for the first time in this court. We agree with the Ninth Circuit's holding that "[w]hen a party could have raised an issue in a prior appeal but did not, a court later hearing the same case need

not consider the matter." *United States v. Nagra,* 147 F.3d 875 (9th Cir.1998); *United States v. Wright,* 716 F.2d 549, 550 (9th Cir.1983) (noting waiver of issues in such situations).

¶ 44 Our adversarial system properly and necessarily precludes injection of new issues on appeal. As an appellate court, we review the decisions of lower courts. In most instances, issues must be raised in the trial court, both to create a record to serve as a foundation for review, and to allow the lower court an opportunity to weigh and decide the issue. Defendant has waived the right to raise the issue at this late date.

¶ 45 In limited circumstances, we recognize that some issues may be so important that overriding considerations concerning the integrity of the system will excuse a party's failure to raise the issue in the trial court. This limited exception is known as the doctrine of "fundamental error." To qualify as "fundamental error," however, the error must be clear, egregious, and curable only via a new trial. *See State v. Gendron,* 168 Ariz. 153, 155, 812 P.2d 626, 628 (1991). The policy of the county attorney's office in the instant case, even if it could be considered erroneous, would not rise to the level of fundamental error.

### D. Independent Review

#### 1. Mitigating circumstances

¶ 46 Defendant requests an independent review of the death penalty as imposed. We are required to do so. *See State v. Brewer,* 170 Ariz. 486, 500, 826 P.2d 783, 797 (1992); *Summerlin,* 138 Ariz. at 435–36, 675 P.2d at 696–97. Specifically, he requests that this court give independent consideration to the mitigating factors of Hammond's opinion, the disparate sentence for Susan Johnson, the prosecutorial policy that seeks the death penalty whenever there is evidence of at least one aggravating circumstance, and the defendant's participation in the crime as aberrant behavior. We have done so and have previously addressed each of these matters.

¶ 47 The defendant raises two arguments not yet addressed. First, he testified that he has tried to be a model inmate and has avoided gangs and drugs while in prison. He also testified that he has had no trouble with authorities or guards. This court has recognized the "model prisoner" assertion as nonstatutory mitigation. *See State v. Poland,* 144 Ariz. 412, 416, 698 P.2d 207, 211 (1985); *State v. Watson,* 129 Ariz. 60, 63–64, 628 P.2d 943, 946–47 (1981). However, the court is not required to accept model-prisoner evidence as mitigating, *State v. Hinchey,* 181 Ariz. 307, 314–15, 890 P.2d 602, 609–10 (1995). Judge Hancock did find that defendant "has tried to be a model inmate." The factor was considered and weighed in resentencing, and Judge Hancock found it to be insufficient so far as leniency is concerned. Nothing in the record suggests the judge improperly weighed the evidence. Moreover, we conclude, with the trial judge, that this defendant's good behavior in prison, while commendable, is not sufficient to reduce the penalty imposed.

¶ 48 Second, defendant's "acceptance of life in prison" as a mitigating factor bears little weight. Judge Hancock stated that he considered the circumstance of life in prison in the resentencing process. We agree with the trial judge and conclude similarly that mitigation of defendant's sentence is not warranted on this factor.

### 2. Issues presented to avoid future claims of procedural default and to preserve claims for further review

¶ 49 Defendant also raises various arguments previously rejected by this court. None of these is helpful to the defendant. We have heretofore ruled: (1) that pecuniary gain, by definition, sufficiently narrows the class of death eligible defendants and focuses directly on the class, *West,* 176 Ariz. at 449, 862 P.2d at 209; (2) that the statute does not preclude a jury finding of aggravating factors, *State v. Milke,* 177 Ariz. 118, 124, 865 P.2d 779, 785 (1993); (3) that the statute need not require the sentencing court to specify which mitigators were proved and which were not, *State v. (Rudi) Apelt,* 176 Ariz. 369, 372, 861 P.2d 654, 657 (1993); (4) that the statutory requirement that mitigators be proved by a preponderance does not preclude consideration of all mitigating factors, *State v. Dickens,* 187 Ariz. 1, 26–27, 926 P.2d 468, 493–94 (1996); (5) that A.R.S. § 13–703, which prescribes the death penalty, is not cruel and unusual on its face, *West,* 176 Ariz. at 455, 862 P.2d at 215; (6) that requiring appellant to choose between gas and injection is not cruel and unusual, *Poland v. Stewart,* 117 F.3d 1094, 1105 (9th Cir.1997); (7) that the statute does not mandate the death sentence upon finding one aggravator, *State v. Gulbrandson,* 184 Ariz. 46, 72, 906 P.2d 579, 605 (1995); (8) that defendant may not death-qualify the sentencing court, *State v. Thornton,* 187 Ariz. 325, 335, 929 P.2d 676, 686 (1996); (9) that the statute provides sufficient guidance in balancing the factors, *id.;* (10) that the statute can require the defendant to prove mitigators by a preponderance of the evidence, *id.;* (11) that the statute need not require the sentencing court to give cumulative consideration to mitigators;[3] (12) that statutory aggravators do sufficiently channel the discretion of the sentencer, *Thornton,* 187 Ariz. at 335, 929 P.2d at 686, (13) that a proportionality review is not constitutionally required, *Dickens,* 187 Ariz. at 26, 926 P.2d at 493, (14) that the statute does not require the sentencer to find that aggravators outweigh mitigators beyond a reasonable doubt, *Thornton,*

---

3. While it is true the statute does not require cumulative weighing of mitigators, this court has decreed that such weighing process be conducted. *See Ramirez,* 178 Ariz. at 131–32, 871 P.2d at 252–53 (if a circumstance is mitigating, the court then should consider each mitigating circumstance individually as well as all mitigating circumstances cumulatively when weighing mitigating and aggravating factors). The trial court indicated that it did so:

I have taken into account the aggravating and mitigating circumstances included in this special verdict.... I have considered the mitigating circumstances of A.R.S. 13–703(G) and any aspect of Mr. White's character or record and *any and all* circumstances of the offense relevant to a determination whether a sentence less than death would be appropriate in this case.

(Emphasis added.) The trial court complied with this court's mandate with respect to the cumulative effect of the mitigating circumstances. We find no reason to disturb the trial court's findings.

187 Ariz. at 335, 929 P.2d at 686; and (15) that there need be no provision for voir dire examination of the sentencing court, *id.*

## CONCLUSION AND DISPOSITION

¶ 50 Based on our independent review of the sentence imposed on the defendant we conclude that the state has proved beyond a reasonable doubt the aggravating circumstance that Michael Ray White murdered David Johnson in anticipation of substantial pecuniary gain. We further conclude, in view of the calculated scheme which resulted in Johnson's death, that the mitigating factors raised by the defendant and discussed in this opinion, whether viewed individually or cumulatively, are insufficient to warrant a mitigation of sentence. They neither outweigh nor are they equal to the statutory aggravating circumstance present in this case. Defendant's capital sentence is therefore affirmed.

FREDERICK J. MARTONE, Justice, and RUTH V. McGREGOR, Justice, concur.

ZLAKET, Chief Justice, dissenting.

¶ 51 I respectfully dissent, believing that death is not the appropriate penalty in this case. Having recently expressed my concerns with the pecuniary gain aggravating factor, *see State v. Greene,* 192 Ariz. 431, 444, 967 P.2d 106, 119 (1998) (Zlaket, C.J., dissenting), I will not repeat them here. I am persuaded, however, that the court today continues down the "slippery slope" that is A.R.S. § 13–703(F)(5).

¶ 52 True, the facts of this case are distinguishable from those in *Greene.* As the majority notes, there is evidence here of a "calculated scheme" to kill for pecuniary gain. Op. at ¶ 17 (p. 349, 982 P.2d p. 824). Nonetheless, I do not find this crime so "shocking or repugnant" that it rises above other murders and cries out for the death penalty. *State v. Watson,* 129 Ariz. 60, 63, 628 P.2d 943, 946 (1981) (capital punishment is "reserved for only the most aggravating of circumstances"). I also cannot disregard the viewpoint of those attorneys who initially prosecuted the defendant. Both of them, being entirely familiar with the facts and the law, stated at resentencing that this was

nothing more than a "run of the mill" murder case, inappropriate for a capital sentence. Believing that such extraordinary testimony was "irrelevant," the trial judge simply ignored it.

¶ 53 While the opinions of prosecutors regarding sentencing are certainly not binding on courts, neither should they be so easily dismissed. Judges have always listened to and weighed the sentencing recommendations of the state's attorneys. After all, it is the prosecutor who alone decides whether the death penalty will be sought in a murder case. *See* Ariz. R.Crim. P. 15.1(g)(1) (requiring the government to disclose its intent to ask for the death penalty within 30 days of arraignment). The prosecutor also has complete control over the presentation of evidence in aggravation. *State v. Murphy,* 113 Ariz. 416, 418, 555 P.2d 1110, 1112 (1976). "[I]f no aggravating circumstances are presented at a hearing, the trial court *must* impose a life sentence." *Id.* (emphasis added); *see also* A.R.S. § 13–703(E).

¶ 54 The majority, while acknowledging clear error in the trial court's relevance ruling, nevertheless dismisses the lawyers' testimony here as "grossly insufficient to warrant a change in sentence," Op. at ¶ 24 (p. 350, 982 P.2d p. 825). Once again, the inexact and highly subjective nature of the "weighing" process is exposed. It is most troubling that those trained in the law and working with the same facts can be so far apart in their assessments, especially when life hangs in the balance. It is all the more astounding when we consider that a prosecutor's opinion regarding sentencing can hardly be viewed as neutral under most circumstances. To my mind, the attorneys' recommendations *against* imposing the maximum penalty in this murder case deserve greater weight than either the trial judge or the majority has accorded them.

¶ 55 The (F)(5) pecuniary gain aggravator covers such a wide range of behavior that it easily lends itself to uneven application. At one end of the spectrum is the unforeseen killing during a robbery. *See, e.g., State v. Fierro,* 166 Ariz. 539, 804 P.2d 72 (1990) (death sentence reduced to life in prison). At the other is the intricately planned and egregious murder of one spouse by another, as in *State v. Willoughby,* 181 Ariz. 530, 549, 892 P.2d 1319, 1338 (1995) ("The quality and strength of [aggravating and mitigating fac-

tors] must ... be considered."). In between are exceedingly variable circumstances. Admittedly, the facts of this killing lean more toward *Willoughby* than *Fierro.* Our case law mandates, however, that death is reserved for the worst of the worst. *See, e.g., Fierro,* 166 Ariz. at 548, 804 P.2d at 81 ("We will not uphold imposition of the death penalty unless either the murder or the defendant differs from the norm of first degree murders or defendants."). In my view, both this crime and its perpetrator fall short of the mark.

¶ 56 I disagree as well with the majority's failure to accord significance to other important evidence. The prosecutors sought the death penalty in spite of their shared belief that this was not a capital case. They did so because the inflexible policy of the Yavapai County Attorney was to automatically seek capital punishment in every case where evidence of at least one statutory aggravating factor was present. We have held, however, that "[a] decision to seek the death penalty requires careful and thoughtful consideration of our death penalty statute, our cases construing it, and all evidence relevant to aggravating and mitigating circumstances." *Holmberg v. De Leon,* 189 Ariz. 109, 110, 938 P.2d 1110, 1111 (1997) (citation omitted). As stated earlier, this decision can only be made by the prosecutor, who is ethically required to be a "minister of justice." Ariz. R.S.Ct. 42, ER 3.8 cmt. He or she has an obligation transcending political considerations and the unrestrained drive to win that so often infects the adversarial process. *See Pool v. Superior Court,* 139 Ariz. 98, 103, 677 P.2d 261, 266 (1984) (quoting *Berger v. United States,* 295 U.S. 78, 88, 55 S.Ct. 629, 633, 79 L.Ed. 1314 (1935)). This responsibility must include the exercise of prosecutorial discretion in seeking the death penalty. Simple recognition that not all murders are the same, and no two murderers are alike, demands that each case receive individual scrutiny. While it may not be the court's place to tell the executive branch how to conduct its affairs, we are free to treat a failure to exercise such discretion as a nonstatutory mitigating circumstance, and I would do so here. ·

¶ 57 I am also dissatisfied with the majority's acceptance of the sentencing dispari-ty between Susan Johnson and this defendant. My colleagues cite the fact that the defendant was the shooter as justification for their position. However, the prosecutor and Susan's own lawyer both testified that she masterminded and solicited the killing of her husband, duping the defendant into committing the crime. While that certainly does not excuse his conduct, it does tend to make a mockery of equal treatment under the law. She lives, he dies.

¶ 58 Susan Johnson's participation in the killing was every bit as significant as that of the defendant, even though she may not have pulled the trigger. Her mitigating circumstances were no more persuasive than his— neither had prior records of significance, both had families and difficult backgrounds. In some ways, I believe Susan is even more culpable than the defendant. He killed a stranger for love and money. The case against her, however, reaches the *Willoughby* extreme. She killed, out of pure greed, someone whose trust and confidence she had garnered, a spouse to whom she had professed love and fidelity.

¶ 59 In *State v. Milke,* 177 Ariz. 118, 865 P.2d 779 (1993), we upheld the death penalty for a mother who planned, but was not present at, the killing of her 4-year-old son by a boyfriend. In finding the killing depraved, we observed that the child had been "delivered into the hands of his killers by the person upon whom he should have been able to rely for protection and compassion—his mother." *Id.* at 125, 865 P.2d at 786. Although similar reasoning should apply to Susan, she inexplicably has been allowed to live. This sentencing disparity is, to my mind, left unanswered by the majority.

¶ 60 I do not believe that the (F)(5) aggravator, standing alone as it does here, outweighs these troublesome considerations. I would reduce defendant's sentence to life imprisonment.

STANLEY G. FELDMAN, Justice, concurs.