741 P.2d 1223

**STATE of Arizona, Appellee,**

v.

**Richard Michael ROSSI, Appellant.**

**No. CR–86–0023–AP.**

Supreme Court of Arizona.

July 21, 1987.

**246**

Robert K. Corbin, Atty. Gen., William J. Schafer III, Chief Counsel, Crim. Div., Diane M. Ramsey, Asst. Atty. Gen., Phoenix, for appellee.

J. Douglas McVay, Phoenix, for appellant.

GORDON, Chief Justice.

In *State v. Rossi*, 146 Ariz. 359, 706 P.2d 371 (1985), we affirmed appellant's convictions for first-degree burglary, attempted first-degree murder, and first-degree murder. We also affirmed appellant's sentences for the first two offenses but vacated appellant's death sentence on the first-degree murder charge and remanded for resentencing.

■ The same trial judge who had conducted the initial aggravation/mitigation hearing held a new aggravation/mitigation hearing on January 17, 1986. Following that hearing, the trial judge once again sentenced appellant to death on the murder charge. The trial judge ruled that the killing was motivated by pecuniary desires and was committed in an especially cruel, heinous and depraved manner. The trial judge found four mitigating circumstances, none of which warranted leniency: appellant admitted guilt and was remorseful; appellant had no prior felony convictions and had been a responsible and productive member of society; appellant had been a model prisoner; and interested persons recommended leniency and attested to appellant's good character. The trial judge also ruled that appellant did not prove by a preponderance of evidence that he could be rehabilitated during a life sentence or that cocaine abuse significantly impaired his capacity to appreciate the wrongfulness of the murder or to conform his conduct to the requirements of law.[1]

We address the following two issues:

---

1. As indicated by the trial judge's findings in this case, a trial judge can conclude that a defendant convicted of first-degree murder has proved by a preponderance of the evidence certain mitigating circumstances and also that the defendant has not proved by a preponderance of the evidence certain other mitigating circumstances. Only after concluding that a defendant has proved by a preponderance of the evidence certain mitigating circumstances must a trial judge determine whether the proven mitigating circumstances warrant leniency. If the trial judge concludes that proven mitigating circumstances warrant leniency, then he must impose

1. Whether a defendant in a capital case has a right to conduct voir dire of the trial judge to determine if he or she can be fair and impartial?

2. Whether the record supports the trial judge's conclusion that appellant failed to prove substantial impairment and probable rehabilitation as mitigation?

We have jurisdiction pursuant to Ariz. Const. art. 6, § 5(3) and A.R.S. §§ 13–4031, –4033.

## I

On January 8, 1986, after our remand but prior to the second aggravation/mitigation hearing, appellant filed a MOTION TO ALLOW COUNSEL TO VOIR DIRE REGARDING SENTENCING. The motion stated in relevant part:

The purpose of voir dire would be to allow undersigned counsel to assess whether the Judge is free of any prejudice or bias related to the factual findings the Court must make as to aggravating and mitigating circumstances under the Arizona Death Penalty statute, A.R.S. § 13–703. The inquiry would be intended to determine whether the Court has prejudged the factual issues in this case or whether there are any other circumstances that exist that would warrant the Judge to be challenged for cause.

It is submitted that the inquiry requested here is particularly important because this Court has previously imposed the death penalty and under those circumstances, it is important to determine if this Court is approaching the resentencing with an open mind.

On appeal, appellant raises three additional concerns allegedly justifying voir dire of the trial judge. First, appellant was entitled to know if the trial judge had formed any predisposition or opinion concerning the abilities or credibility of Dr. George O'Connor, a Maricopa County jail psychiatrist who testified at the second ag-

gravation/mitigation hearing and who had testified before the trial judge on previous occasions. Second, appellant was entitled to know how the trial judge would evaluate and weigh the testimony of Dr. George Nash, a neuropsychiatrist who testified during the second aggravation/mitigation hearing that he opposed the death penalty under any circumstances and that he was a recovering addict and alcoholic. Third; appellant was entitled to know something about the trial judge's opinion of Dr. Francis Enos, a psychologist whose report the trial judge relied heavily upon in concluding that appellant could not be rehabilitated.

The motion was denied. Without citing any case law, appellant contends that denial was improper because the right to question the trial judge about any possible bias, prejudice or predisposition he might have concerning any factual matter that might arise during the aggravation/mitigation hearing is implicit in the due process and fair trial guarantees of the federal and state constitutions.

■ "The right to a fair trial is a foundation stone upon which our present judicial system rests. Necessarily included in this right is the right to have the trial presided over by a judge who is completely impartial and free of bias or prejudice." *State v. Neil*, 102 Ariz. 110, 112, 425 P.2d 842, 844 (1967). "Bias and prejudice means a hostile feeling or spirit of ill-will, or undue friendship or favoritism, towards one of the litigants." *In re Guardianship of Styer*, 24 Ariz.App. 148, 151, 536 P.2d 717, 720 (1975). A trial judge is presumed to be free of bias and prejudice. *State v. Perkins*, 141 Ariz. 278, 286, 686 P.2d 1248, 1256 (1984). To rebut this presumption in a criminal case a party must prove by a preponderance of the evidence that the judge is biased or prejudiced and must file a motion alleging specific grounds of impartiality. Ariz.R.Crim.Pro., Rule 10.1.

a life sentence. If, however, the trial judge concludes that the ·proven mitigating circumstances do not warrant leniency (as in this

case), then he must impose a death sentence. A.R.S. § 13–703(E) (1986 Supp.)

■ Appellant never filed a motion pursuant to Rule 10.1, nor in his motion to voir dire the trial judge does he ever allege that the trial judge acted improperly.[2] Appellant believes, however, that the trial judge *may* have been prejudiced or biased for numerous reasons. Without ever directly saying so, appellant seems to believe that the mere *possibility* of prejudice or bias provides him with a constitutional right to voir dire the trial judge.

We decline to hold that such a right exists for several reasons. First, we have not been cited to any case law, nor has our research revealed any authority, suggesting that such a right exists. Second, removal procedures of Rule 10.1 adequately safeguard a party's constitutional right to a fair trial before an impartial judge, and these procedures would be rendered meaningless and effectively circumvented if permission to question a judge's partiality rested not on concrete facts and specific allegations but on mere speculation, suspicion, apprehension, or imagination. And third, and perhaps most importantly, permitting voir dire of a trial judge on every occasion that the *possibility* of prejudice or bias could arise within the course of a criminal case would not only effectively emasculate the presumption of impartiality bestowed upon the judiciary but also subject the dignity, integrity, and orderly function of the judicial system to repeated frivolous attacks and unwarranted disrepute.

■ The right to voir dire a trial judge concerning possible bias or prejudice is not encompassed within the constitutional right to a fair trial before an impartial judge.

Thus, the trial judge properly denied appellant's motion. We have nevertheless reviewed the record to ensure that appellant received a fair trial before an impartial judge. We conclude that he did.

■ The fact that the trial judge presided at both sentencing hearings is not prima facie evidence of bias or prejudice. *See State v. Poland,* 144 Ariz. 388, 395, 698 P.2d 183, 190 (1985); *State v. Jeffers,* 135 Ariz. 404, 427, 661 P.2d 1105, 1128 (1983); *State v. Neil,* 4 Ariz.App. 258, 262, 419 P.2d 388, 392 (1966), *vacated on other grounds,* 102 Ariz. 110, 425 P.2d 842 (1967); *see also Schoonover v. State,* 2 Kan.App.2d 481, 482, 582 P.2d 292, 295 (1978); *State ex rel. Anaya v. Scarborough,* 75 N.M. 702, 707, 410 P.2d 732, 737 (1966). Nor do we find in appellant's brief or elsewhere in the record any facts suggesting that appellant was denied a fair trial before an impartial judge.

## II

We now determine whether appellant proved by the preponderance of evidence the existence of two mitigating circumstances: (1) appellant could be rehabilitated, and (2) appellant's capacity to appreciate the wrongfulness of his conduct or to conform his conduct to the requirements of law was significantly impaired due to cocaine abuse. The trial court ruled that appellant did not prove the existence of either of these mitigating circumstances by the preponderance of the evidence.

### A. *Rehabilitation*

After sentencing appellant to death, the trial judge said:

---

2. Appellant does not suggest, nor do we believe, that his motion to voir dire the trial judge can be construed as a Rule 10.1 motion. Even if we construed appellant's motion as a Rule 10.1 motion, however, we would conclude that the motion was not timely filed. A Rule 10.1 motion must be filed prior to commencement of a hearing or trial. Rule 10.1(b). Appellant's motion was filed after his trial had started.

Parties are not forever foreclosed from challenging the bias or prejudice of a trial judge once a hearing or trial has commenced. The issue is preserved for appeal if a party has made "[a]llegations of interest or prejudice which prevent a fair and impartial hearing or trial...." Rule 10.1(b). We interpret the quoted phrase as permitting a party to make either oral or written allegations after commencement of a hearing or trial but requiring the party to make allegations with the same degree of specificity as required by a timely-filed Rule 10.1(b) motion. Such specific allegations are missing from appellant's motion, however.

Finally, appellant may also raise a judge's bias or prejudice as a reason for filing a motion for new trial. *See Perkins,* 141 Ariz. at 286, 686 P.2d at 1256; Ariz.R.Crim.Pro., Rule 24.1(c)(5). *Appellant did not list bias or prejudice of his trial judge as a reason for filing his motion for new trial, however.

The defendant alleges as a mitigating circumstance that he is rehabilitatable. The Court finds that the defendant did not prove this factor by a preponderance of the evidence. The psychological evaluation report prepared by Dr. Enos for the previous hearing in summary indicated that the defendant needed to be a big shot as a means of impressing people, and that without a doubt he is a person of superior intelligence, that there were some signs of significant and seriously impacting personality disorders which are a mixture of underlining feelings of inadequacy and inferiority, remembering that the defendant planned and talked about the robbery several days before it occurred, that the defendant used Hydrashok bullets and after their use said the bullets did not make as big a hole as they were supposed to. Considering also that the defendant bragged to his friends about his act and gave three spent bullets to a friend as a souvenir.

When the defendant was surprised by the victim's neighbor, Mrs. Nutter, he shot her twice after he had knocked her down, and later wanted her dead so she could not testify against him.

The defendant later gave his shirt to his girlfriend to check for blood and throw it away if it contained blood.

Because of these factors and the belated expression of remorse and admission of the crime, the Court finds that the defendant is not rehabilitatable, and that this is not a mitigating factor.

Transcript dated January 22, 1986, at 11–13.

Appellant suggests that the testimony of three expert witnesses—Dr. Nash, Dr. O'Connor, and Dr. Donald Tatro, a psychologist—proved by a preponderance of the evidence that appellant could be rehabilitated. Nash testified that appellant could be rehabilitated, that the only barrier to rehabilitation was appellant's cocaine addiction, and that cocaine addiction would not make rehabilitation difficult. He also testified that appellant's dismay over failing to kill Mrs. Nutter, appellant's attempt to have someone kill Mrs. Nutter in the hospital, appellant's gift of spent cartridges as souvenirs, and appellant's delay in expressing remorse exemplified drug-induced behavior rather than roadblocks to successful rehabilitation. O'Connor testified that appellant could be rehabilitated but that rehabilitation would be difficult because of appellant's chemical dependency problem. Tatro testified that appellant could be rehabilitated if he could handle his drug problem.

■ After examining the evidence, we arrive at a conclusion different from that reached by the trial judge on this issue. Unlike the trial judge, we cannot glean from the report of Dr. Enos any opinion on whether appellant can or cannot be rehabilitated. Also, four of the reasons given by the trial judge for his conclusion have no bearing on rehabilitation, according to Nash. And although appellant's discussion of his criminal plans with a friend prior to committing the offenses, appellant's use of Hydrashok ammunition, and appellant's attempt to clean or destroy his bloodstained shirt militate against finding that appellant can be rehabilitated, we believe that the unanimous and uncontradicted opinion shared by three mental health experts and favorable to appellant outweighs such evidence. We hold that appellant proved by the preponderance of the evidence that he could be rehabilitated.

## B. Significant Impairment of Mental Capacity or Physical Conformity

After sentencing appellant to death, the trial judge also said:

Mitigating circumstances: The defendant alleges that his capacity to appreciate the wrongfulness of his conduct or to conform to the requirements of law was significantly impaired due to his cocaine addiction.

The Court finds that it was not proven by a preponderance of the evidence that the defendant's capacity to appreciate the wrongfulness of his conduct to the requirements of the law was significantly impaired. There was no evidence that Mr. Rossi was under the influence of cocaine or any other intoxicant at the

time of the offense, but that it was planned over a period of several days; therefore, the Court finds that this is not a mitigating circumstance.

Transcript dated January 22, 1986, at 9–10.

The following evidence favors appellant. Nash testified that appellant was mainlining cocaine at or near the time of the offense, that appellant's life was "dominated" and "controlled" by drugs, that appellant would not have committed the crime had he not been a cocaine addict, and that appellant's cocaine addiction significantly impaired his capacity to conform his conduct to the requirements of law. Nash also made the following general comments on chemical dependency:

> People go completely contrary to all of their societal values and all of their moral instincts with chemical dependency.
>
> \* \* \* \* \* \*
>
> [A]ddicts will, if deprived of their drug, will even kill for their drug, who otherwise are perfectly normal people. It overwhelms all instinctual controls. It overwhelms all of our societal and moral values. It simply is an overwhelming type of stimulation.
>
> \* \* \* \* \* \*
>
> Those of us who are chemically dependent ... keep increasing use and destroy our value system and the drug becomes the most important thing in our lives. It controls our behavior.
>
> \* \* \* \* \* \*
>
> [An addict will] do anything he can to get the drug. It becomes the most important thing in his life. It overwhelms all of his rational behavior and ability to realize the consequences of their behavior.

Transcript dated January 17, 1986, at 11, 12, 15.[3] O'Connor testified that appellant had been using cocaine during the time that the offenses occurred. William Nelson, appellant's neighbor, saw appellant almost every day during the three weeks preceding the offenses and testified that appellant injected or free-based a gram of cocaine almost every day. Appellant's former girlfriend testified that appellant had been using cocaine intravenously for about six weeks prior to the offenses and that he had used cocaine on the eve of the offenses. Tatro testified that at the time of the crime, appellant had a $1000–per-week cocaine habit and was suffering from "cocaine intoxication with manifestations of delusions and hallucinations of a paranoid nature" and "chronic cocaine abuse." He further testified: "It wasn't just a matter that he was using cocaine and suffering the effects of cocaine. His whole personality began to evolve around the use of cocaine. That was the central occupation in his life." Tatro also indicated that appellant had told him that on the eve of the offenses he had "stayed up all night injecting about $350 worth or four grams of cocaine." Tatro further testified that there was a "good likelihood that [appellant's] judgment was significantly impaired" at the time the offenses occurred and that appellant's cocaine use "impair[ed] his capacity to [m]ake a rational judgment about the rightfulness and the wrongfulness of his behavior."

Balanced against this evidence is the testimony of appellant's boss, who stated that appellant did not appear to be under the influence of drugs on the morning of the crimes, and the additional testimony of appellant's neighbor, Nelson, who did not believe appellant was under the influence of drugs based on personal encounters with appellant hours before and after the time of the offenses. Additionally, certain protective acts taken by appellant suggest that he knew he was doing wrong. First, appellant removed a personal license plate from his car on the day of the crimes.[4] Second, in an attempt to remove any evidence that he had been to the victim's

---

3. Nash also testified that after taking cocaine, a drug user may commit violent acts for three or four days, may suffer paranoia for seven to ten days, may suffer depression for three to four months, and may suffer intense cravings for more cocaine for over a year.

Transcript dated January 17, 1986, at 14, 19.

4. The record does not indicate whether appellant changed his plates prior to or after committing the offenses.

house, appellant attempted to remove his fingerprints from a drinking glass and he searched the victim's desk for any paperwork concerning an earlier sale of a typewriter to the victim. Third, after committing the crimes, appellant took the gun used during the crimes to his mother's house and also attempted to clean or discard his bloodstained shirt. Additional evidence favoring the State on this issue arises from a discussion between appellant and his neighbor, Nelson, shortly after the crimes occurred. Nelson testified that during the discussion appellant recounted such details as dickering with the victim over the price of the typewriter to be sold, drinking a glass of tea and then following the victim back to his bedroom, leaving a bloody $10 bill on the victim's bedroom floor, and remembering where and how many times appellant shot his victim and Mrs. Nutter.

Neither appellant's evidence nor the State's evidence is above reproach. Testimony of the three mental health experts was based on clinical observations of appellant long after appellant had committed the crimes. Their testimony was also based on discussions with appellant himself, who would benefit from their favorable testimony. On the other hand, Tatro discounted the failure of Nelson and appellant's girlfriend to notice whether appellant was under the influence of drugs when the crimes occurred. Tatro testified that a layman probably would recognize only extreme behavior manifested by a drug user and probably would not notice subtle paranoid behavior. He also indicated that appellant could behave in an apparently rational manner when dealing with a nonstressful situation.

■ In determining whether appellant proved by the preponderance of the evidence that his cocaine addiction significantly impaired his "capacity to appreciate the wrongfulness of his conduct *or* to conform his conduct to the requirements of law", A.R.S. § 13–703(G)(1) (1986 Supp.) (emphasis added), we note that the statute is phrased disjunctively. Thus we need not conclude that appellant's cocaine addiction

significantly impaired both his mental capacity and physical conformity before we find the existence of this mitigating factor. Proof of significant impairment of either of these two personal attributes will suffice.

■ We do not believe that appellant proved by the preponderance of the evidence that his cocaine addiction significantly impaired his capacity to appreciate the wrongfulness of his conduct. Critical to our conclusion are the "cover up" acts that appellant committed on the day of the crimes and appellant's ability to recall vivid details of the crimes themselves. We do believe, however, that appellant proved by the preponderance of the evidence that his cocaine addiction significantly impaired his capacity to conform his conduct to the requirements of law. We find very persuasive Dr. Nash's unrefuted testimony on chemical dependency in general and how addiction fosters an insatiable and life-controlling craving for additional drugs that overwhelms the user's ability to control his physical behavior.

### III

We have searched the record for fundamental error and have found none. A.R.S. § 13–4035. We affirm the trial court's denial of appellant's motion to voir dire the trial judge and its conclusion that appellant did not prove by the preponderance of the evidence that his cocaine addiction significantly impaired appellant's capacity to appreciate the wrongfulness of his conduct. We reverse the trial court's conclusion that appellant did not prove by the preponderance of the evidence that he could be rehabilitated during a life sentence and that his cocaine addiction significantly impaired his capacity to conform his conduct to the requirements of law.

■ We remand this matter for resentencing, at which time the trial judge must consider the two additional mitigating circumstances when imposing a new sentence. We express no opinion, however, on whether the trial judge should impose a life sentence or a death sentence.

FELDMAN, V.C.J., and CAMERON and HOLOHAN, JJ., concur.

MOELLER, J., did not participate in the determination of this matter.