4 P.3d 455

**STATE of Arizona, Appellee,**

v.

**Oliver Lee HURLEY, Appellant.**

**No. 1 CA–CR 98–0525.**

Court of Appeals of Arizona, Division 1, Department B.

Feb. 24, 2000.

Janet Napolitano, The Attorney General by Paul J. McMurdie, Chief Counsel and Jon G. Anderson, Assistant Attorney General Criminal Appeals Section, Phoenix, Attorneys for Appellee.

H. Allen Gerhardt, Coconino County Public Defender, Flagstaff, Attorney for Appellant.

## OPINION

THOMPSON, Presiding Judge.

¶ 1 Oliver Lee Hurley (defendant) appeals from his conviction and sentence for reckless manslaughter. We have jurisdiction pursuant to Ariz.Rev.Stat. Ann. (A.R.S.) § 12–120.01(A)(1). For the following reasons, we affirm.

### FACTUAL AND PROCEDURAL HISTORY

¶ 2 On the night of January 21, 1998, defendant and his girlfriend went to the Windy Mesa Bar in Page. Kenneth R. and Kevin M. arrived at the same bar later that evening. Later, defendant and Kenneth went outside the bar.

¶ 3 Greg C., another bar patron, had left the bar at the time defendant and Kenneth went outside. As Greg walked away from the bar, defendant, his girlfriend, and Kenneth were behind him. Greg heard kicking and hitting noises, turned around, and saw someone fall back into a fence. Later, Greg realized that it was defendant hitting and kicking Kenneth, whose head "was all beat up."

¶ 4 Kevin later found Kenneth after hearing moaning outside of the bar. According to Kevin, Kenneth was "beyond recognition," and the only reason Kevin was able to identify him was by a turquoise watch Kenneth always wore. Kenneth had blood coming out of his mouth and his face was swollen, and Kevin told him not to speak after he attempt-

ed to do so. Kevin thought that Kenneth also had blood coming out of his ear. Richard M., an employee at Windy Mesa, testified that Kenneth was "gurgling blood" and appeared to be unconscious. Richard testified that Kenneth had blood on his face and that his face was beaten badly. Patrol Corporal James Bartell testified that one of Kenneth's eyes was swollen completely shut, and Corporal Michael Bergner testified that blood came from Kenneth's mouth and nose.

¶ 5 Defendant's girlfriend had been outside and witnessed the two men walk out. She testified that defendant had previously told her that "he had to take care of something with someone." Defendant confronted Kenneth, and defendant's girlfriend witnessed him throw the first punch at Kenneth. By the time defendant's girlfriend told him to leave Kenneth alone, Kenneth was on the ground.

¶ 6 Later, defendant's girlfriend asked him who he had beaten up and why. He replied that it was "Kenny something." Defendant also stated that Kenneth had sexually assaulted him in the past.

¶ 7 When defendant was arrested, he had blood stains on the front of his shirt and pants and abrasions on his knuckles, which still had fresh blood on them. Police observed what appeared to be wet blood on defendant's shoes. On the way to the police station, defendant stated that he knew why he was in handcuffs and that "I did it. I admit it. I did it." Defendant also stated that he "had beat that guy."

¶ 8 Kenneth died from his injuries on January 27, 1998. Defendant was charged with one count of aggravated assault, a class 3 felony, and one count of second degree murder, a class 1 felony. Prior to trial, the trial court dismissed the aggravated assault charge. A jury found defendant guilty of the lesser-included offense of reckless manslaughter. The jury also found that defendant had a prior felony conviction for aggravated assault, and the trial court imposed an aggravated sentence of seventeen years in prison. Defendant timely appealed from the judgment and sentence.

## DISCUSSION

### I. Reckless Manslaughter is a Lesser–Included Offense of Knowing Second Degree Murder

¶ 9 We review the trial court's decision to give or refuse a jury instruction for an abuse of discretion. *See State v. Bolton,* 182 Ariz. 290, 309, 896 P.2d 830, 849 (1995). Defendant was charged with violating A.R.S. § 13–1104(A)(2) (Supp.1998), which provides that a person commits second degree murder if, knowing that his conduct will cause death or serious physical injury, such person causes the death of another. During the settling of jury instructions, the trial court asked the prosecutor whether he requested that the jury be instructed on lesser-included offenses. The prosecutor responded that he thought a manslaughter instruction would be appropriate, but that he was not aware of any way in which a negligent homicide instruction would be warranted.

¶ 10 Defense counsel objected to a manslaughter instruction, arguing that there was no evidence that defendant had acted recklessly. He contended that defendant had knowingly beaten the victim and was either guilty of second degree murder or was not guilty based on defendant's claim of self-defense.

¶ 11 The prosecutor responded that a manslaughter instruction was appropriate under A.R.S. § 13–1103(A)(2) (Supp.1998), based upon evidence of a sudden quarrel, but that he was unaware of any theory under which an instruction based upon recklessness would be warranted. The trial court noted that the jury could conclude that defendant had been reckless in the degree of force employed without knowing that he would cause serious physical injury. The prosecutor agreed with the trial court's analysis and requested a reckless manslaughter instruction. Over defendant's objection, the court instructed the jury on sudden quarrel manslaughter and reckless manslaughter as lesser-included offenses. The jury convicted defendant of reckless manslaughter.

¶ 12 Defendant concedes that some types of manslaughter do constitute lesser-included offenses of second degree murder. However,

he contends that a charge of knowing second degree murder under A.R.S. § 13–1104(A)(2) does not necessarily include the offense of reckless manslaughter under A.R.S. § 13–1103(A)(1), which prohibits recklessly causing the death of another. We disagree.

¶ 13 A crime is a lesser-included offense when either (1) the offense by its very nature is always a constituent part of the greater offense, so that it is impossible to commit the greater offense without necessarily committing the lesser offense or (2) when the charging document describes the lesser offense even though the lesser offense would not always form a constituent part of the greater offense. *See State v. Scott,* 177 Ariz. 131, 139–40, 865 P.2d 792, 800–01 (1993) (citations omitted). An offense is a constituent part of a greater offense if the lesser offense is composed solely of some, but not all, of the elements of the greater crime. *See State v. Celaya,* 135 Ariz. 248, 251, 660 P.2d 849, 852 (1983) (citing *State v. Malloy,* 131 Ariz. 125, 639 P.2d 315 (1981)). Both the defendant and the prosecutor are entitled to instructions on any lesser-included offense for which there is evidentiary support. *See State v. Govan,* 154 Ariz. 611, 615, 744 P.2d 712, 716 (App.1987).

¶ 14 Section 13–202(C) (1989) provides, in relevant part:

> If acting recklessly suffices to establish an element [of an offense], that element is also established if a person acts intentionally or knowingly.

Thus, recklessly is a lesser-included mental state of knowingly. *See State v. Bay,* 150 Ariz. 112, 117, 722 P.2d 280, 285 (1986) (rejecting claim that mental states of knowingly and recklessly are mutually exclusive). A charge that a defendant killed another person knowing that his conduct would cause death or serious physical injury necessarily includes an allegation that the defendant acted recklessly by being aware of and consciously disregarding a substantial and unjustifiable risk that his conduct could result in death. *See A.R.S.* § 13–105(9)(c) (Supp. 1998) (defining "recklessly"). Thus, reckless manslaughter is a lesser-included offense of knowing second degree murder.

¶ 15 Furthermore, there was evidentiary support for the reckless manslaughter instruction. This case is indistinguishable from *Govan.* In *Govan,* the defendant was charged with second degree murder. 154 Ariz. at 612, 744 P.2d at 713. The state requested a lesser-included instruction on reckless manslaughter. *See id.* at 614, 744 P.2d at 715. Govan objected that there was no evidence to support the instruction. *See id.* On appeal, he argued that his theory of self-defense precluded the possibility of manslaughter, claiming that he had committed an intentional act, but that he acted in self-defense. *See id.* We affirmed Govan's conviction for reckless manslaughter, concluding that evidence that Govan and the victim were arguing, combined with evidence that the victim had shot at Govan earlier in the day and Govan's statement that he did not aim at the victim when he fired may have convinced a rational fact-finder that Govan had acted recklessly. *See id.* at 615, 744 P.2d at 716.

¶ 16 In this case, defendant testified that he had been sexually assaulted by the victim approximately two and one-half years before the killing. On the evening of the instant offense, defendant encountered the victim at a bar. Defendant claimed that he approached the victim to warn him to leave him alone. According to defendant, the victim responded by grabbing him. Defendant pushed the victim away and hit him in the face. The victim fell to the ground, and defendant started to walk away. The victim then tackled defendant, who punched the victim until he let go.

¶ 17 Defendant insisted that he had only used the amount of force necessary to defend himself. He repeatedly denied using sufficient force to seriously harm the victim and denied causing the victim's death. As in *Govan,* a reasonable juror could conclude that defendant consciously disregarded a substantial risk that his conduct would cause the victim's death, without actually knowing that death or serious physical injury would occur. The reckless manslaughter instruction was appropriate.

## II. The Trial Judge Was Not Biased

¶ 18 The state originally alleged that defendant had three prior felony convictions.

**404**

Before trial, the judge inquired of the parties whether, in light of the allegation of priors, a twelve-person jury was required. Defense counsel refused to take a position on the issue. The court noted that, if the state were to withdraw one or all of the allegations of prior convictions, thereby reducing the potential sentence defendant could receive, only eight jurors would be required. The court observed that proceeding in such a manner might be to the state's benefit, commenting that it is "easier to convince" eight people than twelve. The judge made clear, however, that whether to pursue the prior conviction allegations was up to the state, and that the court was prepared to proceed with selection of either a twelve-person jury or an eight-person jury.

¶ 19 The prosecutor responded that, if defendant were convicted of a lesser-included offense of manslaughter, the allegation of priors would expose him to a sentence in excess of thirty years, necessitating a twelve-person jury. *See State v. Pope*, 192 Ariz. 119, 120, ¶ 3, 961 P.2d 1067, 1068 (App.1998), *review denied* (Sept. 10, 1998) (state constitution guarantees right to twelve-person jury if imprisonment for thirty years or more authorized by law).[1] The prosecutor stated that he would move to dismiss one of the allegations of prior convictions if the court would entertain such a motion but wondered whether the agreement of defendant was required. The judge stated that he was unaware of any requirement that defendant concur in the dismissal, that he was inclined to grant the motion, and that he would address the matter further the next day before beginning jury selection.

¶ 20 Defendant responded by filing a motion for change of judge for cause, arguing that the trial judge was biased against him because he had given the state tactical legal advice by suggesting that it proceed with an eight-person jury. After a hearing, the motion was denied by another judge, who concluded that defendant had not established bias or that the trial court had abandoned its role of neutral tribunal.[2]

¶ 21 Back before the trial judge, the state moved to dismiss all but one of the allegations of prior convictions. Defense counsel insisted upon a twelve-person jury but refused to offer any opinion as to whether defendant faced a sentence of thirty years or more. The trial court denied the request for a twelve-person jury, and trial proceeded before a panel of eight jurors and two alternates.

¶ 22 At sentencing, the state and the probation department recommended an aggravated sentence of eighteen and one-half years in prison. The prosecutor noted that, in addition to three prior aggravated assault convictions, defendant had twenty-two prior misdemeanors, fifteen of which involved assaults.

¶ 23 Noting the degree of force used, the court found the killing to be especially cruel, at least as that term is commonly understood. However, the judge also expressed doubt about whether a cruelty finding would "hold[ ] up on appeal" and made clear that he would have imposed the same sentence, an aggravated term of seventeen years, based upon defendant's criminal record alone.

¶ 24 On appeal, defendant claims that the court's sentencing decision and its pretrial comments on the prospect of an eight-person jury and the propriety of a manslaughter instruction all constitute evidence of the trial court's bias justifying a new trial or, alternatively, resentencing before a different judge. A trial judge is presumed to be free of bias and prejudice. *See State v. Medina*, 193 Ariz. 504, 510, ¶ 11, 975 P.2d 94, 100 (1999) (citing *State v. Rossi*, 154 Ariz. 245, 247, 741 P.2d 1223, 1225 (1987)). To rebut such a presumption, a party must

1. Because second degree murder is not subject to prior conviction enhancements under A.R.S. § 13–604 (Supp.1998) (except under subsection S, which is not applicable here), defendant faced no more than twenty-two years in prison if convicted on that charge. *See* A.R.S. § 13–710(A) (Supp.1998) (sentencing scheme for second degree murder).

2. Defendant subsequently requested that the trial court issue a stay to allow special action review of the denial of the motion for change of judge. The trial court denied the stay request.

prove bias or prejudice by a preponderance of the evidence. *See id.*

 ¶ 25 Defendant has presented no evidence that the trial judge was biased. As to the issue of an eight-person jury, the trial court simply recognized the obvious fact that a twelve-person jury was required only if the prosecutor wished to pursue all of the original allegations against defendant. The trial judge made clear at the time of his comments that it was entirely up to the state whether to proceed with the original charges or to dismiss any of the allegations of prior convictions. The trial court noted that it had made arrangements to use a different courtroom if a jury of twelve was required because the judge's regularly assigned courtroom was inadequate for such a proceeding. Furthermore, the trial court's consideration of whether the evidence supported a reckless manslaughter instruction did not reflect bias. Contrary to defendant's claim, the trial judge had not become an advocate for the state.

¶ 26 As to the sentencing issue, defendant contends that the trial court's finding of cruelty was improper because the victim was rendered unconscious "almost immediately." *See State v. Amaya–Ruiz,* 166 Ariz. 152, 177, 800 P.2d 1260, 1285 (1990) (finding of cruelty requires that victim be conscious at time of offense in order to suffer pain and distress). However, while several witnesses testified that the victim was unconscious shortly after the assault, others stated that the victim, who had been beaten severely, was trying to speak or was "semi-conscious" and moaning. In fact, defendant himself testified that he thought the victim was conscious after the assault.[3]

¶ 27 Further, the trial court made clear that it was not using the cruelty finding as a basis for increasing defendant's sentence. Rather, it expressly found that defendant's criminal history alone warranted the sentence that was imposed, which, although aggravated, was less than the maximum possible. The trial court's comments at sentencing reflect a careful consideration of the circumstances of the offense as well as other aggravating and mitigating factors, not judicial bias.

## CONCLUSION

¶ 28 For the foregoing reasons, we affirm defendant's conviction and sentence.

CONCURRING: WILLIAM F. GARBARINO, Judge, and JAMES B. SULT, Judge.

---

**3.** Even if the trial court erred in finding the offense to be "cruel," it could still consider the brutal nature of the offense as an aggravating circumstance. *See State v. Inglish,* 129 Ariz. 444, 445, 631 P.2d 1102, 1103 (App.1981) (under former A.R.S. § 13–702(D)(9) (now § 13–702(C)(15) (Supp.1998)), court can consider circumstances of crime in aggravation).