NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

In re the Matter of:

APRIL C. HINTON, *Petitioner/Appellant*,

*v.*

KYLE D. HINTON, *Respondent/Appellee*.

No. 1 CA-CV 19-0427 FC
FILED 4-2-2020

Appeal from the Superior Court in Maricopa County
No. FC2016-004619
The Honorable Katherine M. Cooper, Judge

**AFFIRMED**

COUNSEL

Gillespie, Shields, Goldfarb & Taylor, Phoenix
By DeeAn Gillespie Strub and Mark A. Shields
*Counsel for Petitioner/Appellant*

Kyle D. Hinton, San Tan Valley
*Petitioner/Appellee*

---

**MEMORANDUM DECISION**

---

Presiding Judge Paul J. McMurdie delivered the decision of the Court, in which Judge Jennifer B. Campbell and Vice Chief Judge Kent E. Cattani joined.

---

**M c M U R D I E**, Judge:

¶1        April C. Hinton ("Mother") appeals from an order modifying legal decision-making and parenting time concerning her three children. For the following reasons, we affirm.

**FACTS AND PROCEDURAL BACKGROUND[1]**

¶2        Mother and Kyle D. Hinton ("Father") married in 2000 and together had three children: Bradlee, Kaden, and Amaya. In June 2016, Mother petitioned for the dissolution of the parties' marriage. The parties ultimately submitted a shared parenting plan to the court. In the plan, the parties conceded there had been mutual domestic violence during the marriage, but agreed to joint legal decision-making with Mother designated as the primary residential parent. The parties also agreed to the following parenting time: (1) Father would have parenting time every other weekend during the fall, winter, and spring and every other week during the summer, with the children residing with Mother at all other times; and (2) an equal share of all holidays and school breaks. The court entered a consent decree dissolving the marriage and approving the parenting plan.

¶3        Over the next year and a half, a series of incidents escalated the tension between Mother and Father over the exercise of Father's parenting time. In August 2017, while the children were staying with Father, a physical altercation broke out between Bradlee (then 15 years old), Father, and Father's girlfriend. After a shouting match ensued over Bradlee's refusal to listen to Father and his girlfriend's directions, Father slapped Bradlee across his face. Bradlee responded by punching Father in

---

[1]        We view the facts in the light most favorable to sustaining the superior court's findings and orders. *Alvarado v. Thomson*, 240 Ariz. 12, 13, ¶ 1, n.1 (App. 2016).

the head, and a scuffle broke out. The police were called to the scene, but no charges were filed.

¶4        Next, in September 2017, Bradlee called the police after he returned to Father's house from a party and discovered Father and his girlfriend were gone. They had left Kaden and Amaya, along with Father's girlfriend's two children, ages one and two years old, unsupervised. When Father and his girlfriend returned home about three hours later, they told the police they went to a friend's house, left Kaden (then eight years old) in charge, and expected Bradlee to arrive shortly after they left to watch the children. Father was charged with misdemeanor charges of child neglect and contributing to the dependency of a minor, which were dismissed after Father completed counseling services.

¶5        Finally, in May 2018, Father requested that the Goodyear Police Department supervise an exchange of the children. When the police arrived, Mother refused to exchange the children, explaining the children did not want to go and that she had been granted a modification of parenting time and an order of protection against Father. Although she did not have a copy of the order of protection with her, she claimed it was in the process of being served. These statements were false. Mother had not acquired an order of protection or a modification at that time. Nevertheless, the police took no action, the exchange did not take place, and the children remained with Mother. Shortly thereafter, Mother petitioned for and obtained an order of protection against Father. But the children were not listed as protected parties under the order of protection, and the order of protection was dismissed after a hearing.

¶6        The tension caused by these incidents came to a boil in September 2018, when Mother filed a petition to modify parenting time. In the petition, Mother asserted Bradlee and Kaden no longer wished to visit Father and that, based on the incidents described above, the children were no longer safe in Father's care. Mother also asserted Father smoked marijuana in his home, became aggressive when he smoked, and that a "bong [was] near where the children were sleeping." Mother requested the court either limit Father's parenting time to public visits at the children's discretion or eliminate his parenting time. The superior court set the matter for an evidentiary hearing and issued an order requiring both parents to appear. Before the hearing, Mother submitted numerous exhibits, including an exhibit documenting that she had served Father with the petition and the notice to appear. This exhibit included a return receipt purportedly bearing Father's signature.

¶7         On November 6, 2018, at the time scheduled for the modification hearing, Father was not present. The court attempted to contact him through a phone number listed for Father, but he did not answer. The court then questioned Mother concerning whether she had discussed the hearing with Father and asked her whether the signature on the return receipt was Father's. Under oath, Mother told the court that she had not spoken with Father about the hearing, but asserted that the signature on the return receipt was his. The court proceeded with the hearing, received testimony and other evidence from Mother, and took the matter under advisement.

¶8         Before the court ruled on the petition, two developments resulted in further proceedings on Mother's petition. First, after reviewing the evidence presented by Mother, the court found that "it [was] in the children's best interest to conduct a further hearing on the issues presented," and scheduled another hearing for December 2018. Second, Father filed a "Motion to Challenge Service of Hearing" asserting: (1) he had never received notice of the November 2018 hearing; and (2) the signature on the return receipt was not his.

¶9         At the December 2018 hearing, the court took testimony from the parties concerning the service-of-process issue, including who signed the return receipt. After comparing the signature on the return receipt with other documents in the record and asking Mother to reaffirm her claim that the signature was Father's, the court concluded that Mother was not credible and that she had deliberately and intentionally misled the court regarding service of process in an attempt to restrict Father's parenting time. The court then: (1) appointed a therapeutic interventionist to provide assistance to the court and facilitate the reunification of the children with Father; and (2) ordered that Father have parenting time with the children according to the dissolution decree's parenting plan. Finally, the court set a status conference regarding the therapeutic intervention for January 2019.

¶10        On December 28, 2018, another incident changed the nature and urgency of the modification proceedings. During the exercise of her parenting time, Mother took Amaya, who had been ill all week, to a clinic where she was then transferred to the emergency department at Phoenix Children's Hospital ("PCH"). At PCH, Mother told hospital staff she suspected that Amaya's condition might be related to substance abuse by Father and requested a drug test for Amaya. Although Amaya was not showing any symptoms of substance exposure, Amaya's treating physicians conducted a urinalysis on Amaya. The test was positive for amphetamines and fentanyl. PCH reported the positive test result to the

Department of Child Safety ("DCS"), who, in turn, contacted the Goodyear Police Department. A DCS investigator arrived shortly thereafter, and, based on discussions with hospital staff concerning the length of time amphetamines would remain present in an individual's body, concluded Amaya could not have been exposed to these drugs under Father's care. DCS then issued a "present danger plan" requiring Mother's interactions with the children to be supervised by a responsible adult.

¶11        Three days after the hospital incident, Father filed a motion for temporary parenting orders. Father argued that he should be granted sole legal decision-making over the children and that Mother should only have restricted, supervised, or no parenting time. The court granted the motion *ex parte*, ordered that Kaden and Amaya reside primarily with Father and Mother's parenting time with all of the children be supervised. The court also set an evidentiary hearing on the motion for the same date as the January 2019 status conference.

¶12        At the January 2019 hearing, Father, Mother, and the DCS investigator testified regarding the circumstances surrounding Amaya's hospitalization and the temporary orders. The DCS investigator testified that: (1) based on her training and experience and her discussions with hospital staff, she concluded Amaya was exposed to the drugs under Mother's care; (2) she received a great deal of pushback from Mother when she confronted Mother about the test; and (3) based on her interviews with Bradlee and Kaden, she suspected the children had been coached on what to say. She also testified that DCS's investigation was ongoing. During Mother's testimony, Mother claimed the detective investigating Amaya's exposure to drugs told her that he was not concerned with Mother right now, and "want[ed] to polygraph [Father]."

¶13        During the cross-examination of Father, Mother attempted to ask Father about the service-of-process issue and his signature on the return receipt. The court interjected, stating, "[w]e're not relitigating that. We had a hearing on that. That is tak[en] care of." When Mother claimed that she "need[ed] to make a record" concerning this issue, the court repeated: "No ma'am. I said, we're not relitigating the issue." After the hearing, the court affirmed the temporary parenting-time order.

¶14        The court held a final hearing on Mother's petition to modify in March 2019, during which the police detective investigating Amaya's exposure to drugs, Mother, Father, and several members of their respective families testified. The therapeutic interventionist assigned to the case, Dr. Ronn Lavit, did not testify, but the court admitted a summary of his

preliminary report into evidence. Upon examination, the detective testified that the positive result for amphetamines in Amaya's drug test was ultimately determined to be a false positive and that they were awaiting additional tests for the fentanyl. The detective also testified that law enforcement was still investigating both Mother and Father.

¶15 During Mother's testimony, she was questioned about a series of text-message conversations that occurred between Mother, Kaden, and Bradlee around January 3 and 4, 2019. In the conversations, Mother made numerous troubling statements to Kaden and Bradlee, including statements: (1) requesting Kaden question Amaya about why she told the DCS investigator that Mother put "meth" in her urine sample, and asserting that "[Father] is going to be so shocked real soon here"; (2) telling Bradlee that Father "doesn't know how deep he's in yet"; (3) encouraging Kaden to "say [you] want out of that drug house" after she sent police to Father's home; and (4) stating to Kaden that she was "slamming [Father and his girlfriend] in court." When confronted with these conversations, Mother claimed that she had stopped messaging the children after she retained counsel and that she sent the messages to try and comfort Kaden because he was "breaking down and scared and fearful." Images of the text-message conversations were admitted into evidence.

¶16 On March 12, 2019, the superior court issued a 27-page ruling modifying Mother and Father's legal decision-making and parenting time. In the ruling, the court engaged in a detailed analysis of each of the statutory factors governing legal decision-making and parenting time, Ariz. Rev. Stat. ("A.R.S.") § 25-403(A), and found that each factor weighed in favor of Father. Relying on the text messages between Mother, Kaden, and Bradlee, the circumstances surrounding Amaya's hospitalization, Mother's misrepresentations to the police during the May 2018 custody exchange incident, and Mother's unreasonable positions regarding Father during the proceedings, the court found Mother had deliberately "engaged in a several-year course of conduct intended to undermine Father's relationship with the children."

¶17 After comparing Father's current relationship with the children to his relationship with them in 2016, the court found Father's relationship with Bradlee and Kaden had considerably deteriorated and that Mother's "long campaign of alienation" was primarily responsible for the break-down of their relationship with Father. Based on these findings, the court concluded the modification of legal decision-making and parenting time was appropriate and awarded Father sole legal decision-making authority regarding the children.

**¶18**        The court also concluded that allowing the children unsupervised parenting time with Mother would endanger the mental and emotional health of the children due to "substantial evidence of alienating conduct and manipulation of the children." The court ordered that, effective immediately, Kaden and Amaya would live with Father, and that Mother would only be allowed supervised parenting time subject to numerous conditions. The court did not make orders concerning Mother's parenting time with Bradlee because he would emancipate in October 2019 but ordered that he was to have no contact with Kaden and Amaya due to his allegiance to Mother.

**¶19**        A few days later, the court set a review hearing for May 2019 "to ensure that the children's educational and counseling needs [were] being met pursuant to [the March 2019 modification order]."

**¶20**        Mother filed a motion to alter or amend the March 2019 modification order under Arizona Rule of Family Law Procedure ("Rule") 83,[2] arguing, *inter alia*, that the court findings related to the service-of-process issue at the December 2018 hearing were erroneous. Mother attached documents to the motion that she claimed would show that it was Father, not Mother, who misled the court regarding the service of Mother's modification petition.

**¶21**        At the May 2019 review hearing, Mother's counsel again attempted to make a record on the service-of-process issue, and requested an opportunity to call a postal worker to testify concerning the infallibility of the method by which Mother chose to serve Father. The court refused to address the issue, explaining: "Counsel, please do not go there. That has been ruled upon, and that issue is . . . over." Shortly after that hearing, the court issued an order denying Mother's Rule 83 motion. Mother appealed, and we have jurisdiction under A.R.S. § 12-2101(A)(2) and Rule 78(c).

## DISCUSSION

**¶22**        On appeal, Mother argues: (1) the superior court erred by refusing to consider evidence undermining its finding that Mother misled the court concerning the service of the petition for modification and that this erroneous finding prejudiced the court against Mother; (2) the court

---

[2]        The Arizona Rules of Family Law Procedure have since been abrogated and replaced but because the relevant rules do not materially differ from the new rules, we cite to the current rules.

abused its discretion by failing to consider evidence of Father's drug use, domestic violence, and child neglect; and (3) there was insufficient evidence to support the March 2019 decision-making and parenting-time order.[3]

**¶23** "We review the superior court's legal decision-making and parenting-time orders for an abuse of discretion." *DeLuna v. Petitto*, 247 Ariz. 420, 423, ¶ 9 (App. 2019). But we review the interpretation of rules *de novo. Engstrom v. McCarthy*, 243 Ariz. 469, 471, ¶ 4 (App. 2018). "A court abuses its discretion if it commits an error of law in reaching a discretionary conclusion, it reaches a conclusion without considering the evidence, it commits some other substantial error of law, or 'the record fails to provide substantial evidence to support the trial court's finding.'" *Walsh v. Walsh*, 230 Ariz. 486, 490, ¶ 9 (App. 2012) (quoting *Flying Diamond Airpark, L.L.C. v. Meienberg*, 215 Ariz. 44, 50, ¶ 27 (App. 2007)).

## A. The Superior Court's Actions Concerning the 2018 Service-of-Process Finding Did Not Result in Reversible Error.

**¶24** Mother argues the superior court's refusal to allow her to offer evidence refuting the court's finding that she misled the court regarding service of the petition for modification during the December 2018 evidentiary hearing, January 2019 temporary orders hearing, and May 2019 review hearing constituted reversible error. Because the court did not certify its finding that Mother falsified evidence concerning service of the petition for modification as final under Rule 78(b), Mother asserts the order was "subject to revision at any time," and the court was obligated to allow Mother to submit relevant evidence undermining the court's service-of-process finding. Mother also contends the court's refusal to revisit its allegedly erroneous conclusion was not harmless error because the conclusion caused the superior court to become biased against her, and that this bias permeated the rest of the court's March 2019 parenting order.

---

[3] Because Father did not respond to these arguments in his answering brief, Mother asserts in her reply brief that these arguments should be deemed admitted. Although a party's failure to contest an argument on appeal may be deemed a confession of error, *see In re 1996 Nissan Sentra*, 201 Ariz. 114, 117, ¶ 7 (App. 2001), we decline to do so here.

## 1. The Superior Court Did Not Err by Refusing to Consider Evidence Related to the Service-of-Process Finding.

**¶25** At the outset, we reject Mother's claim that Rule 78(b) required the superior court to reconsider the service-of-process finding each time Mother decided to furnish related evidence. Mother is correct that the rule provides that "any decision . . . that adjudicates fewer than all the claims . . . is subject to revision at any time before the entry of a judgment adjudicating all the claims" unless the court certifies the judgment as final in the manner the rule requires. Ariz. R. Fam. Law P. ("ARFLP") 78(b). But Mother cites no authority for the proposition that this language means the court must allow a party to reopen an issue it has decided whenever and in whatever manner a *party* chooses.

**¶26** Adopting Mother's interpretation of Rule 78(b) would render the procedural mechanisms provided by the Arizona Rules of Family Law Procedure meaningless to parties seeking to have the court clarify, reconsider, alter, or amend an order, judgment, or ruling. *See, e.g.*, ARFLP 35(a)(1) (party must request court order by motion); ARFLP 35.1(a) ("A party seeking reconsideration of a court order or ruling may file a motion for reconsideration."); ARFLP 83 (on motion by a party, the court may alter or amend all or some of its rulings on any one of eight grounds); ARFLP 84(a) (party may file a motion seeking clarification of confusing or ambiguous court ruling). And it would undermine the superior court's authority "to control the courtroom and trial proceedings." *Christy A. v. ADES*, 217 Ariz. 299, 308, ¶ 31 (App. 2007). Outside the recognized procedural mechanisms described above, whether a party may present evidence or argument concerning an issue decided by a court in an earlier proceeding is a matter within the court's discretion. We will not disturb the court's decision "unless we are persuaded that the exercise of such discretion resulted in a miscarriage of justice or deprived one of the litigants of a fair trial." *Id.* (quoting *O'Rielly Motor Co. v. Rich*, 3 Ariz. App. 21, 27 (1966)).

**¶27** Here, the superior court acted within its discretion when it rejected Mother's attempts to relitigate the service-of-process finding during the December 2018, January 2019, and May 2019 hearings. Simply put, Mother did not present her arguments and evidence concerning the service-of-process issue at the proper time and manner. Concerning the December 2018 hearing, it is unclear whether Mother's request to make a statement concerned the service-of-process matter, and, if so, the request was made after the court: (1) had already found her testimony on this issue lacked credibility; and (2) had concluded she had misled the court. As for

the January 2019 hearing, it was a temporary orders hearing held to address the allegations surrounding Amaya's exposure to dangerous substances and for the court to determine whether maintaining its emergency parenting orders were necessary. And the May 2019 hearing was a review hearing set for the court to assess whether "the children's educational and counseling needs were being met" under the March 2019 parenting order. The court's decision to confine Mother to the issues relevant to those proceedings did not constitute a miscarriage of justice or deprive Mother of a fair trial.

**¶28** To be sure, had the superior court refused to allow Mother to present evidence challenging the service-of-process finding at the March 2019 modification hearing, her claim of error would potentially have merit. Such evidence was undoubtedly relevant to the court's evaluation of the children's best interests at the hearing. *See* A.R.S. § 25-403(A)(7) (court is to consider "[w]hether one parent intentionally misled the court to cause an unnecessary delay, to increase the cost of litigation or to persuade the court to give a legal decision-making or a parenting time preference to that parent"). And the court ultimately referenced the service-of-process finding in its analysis of the statutory factors. But other than briefly mentioning the service-of-process issue in her pretrial statement, Mother did not attempt to submit her evidence at the March 2019 modification hearing. Thus, we conclude the court did not err by rejecting Mother's efforts to relitigate the issue during proceedings where it served no purpose.

**¶29** Finally, Mother was not deprived of a fair trial because she was able to file a Rule 83 motion in which she challenged the service-of-process finding and presented the offer of proof the court refused to allow during the hearings. Although the superior court summarily denied the motion, we assume the court considered the evidence presented and made the findings necessary to support its judgment. *In re CVR 1997 Revocable Tr.*, 202 Ariz. 174, 177, ¶ 16 (App. 2002) (when the superior court does not make specific findings of fact, an appellate court presumes "that the trial court found every fact necessary to sustain its ruling and will affirm if any reasonable construction of the evidence supports its decision"). And while Mother contends it was error to force her to make this argument in a separate motion, she does not explain why requiring her to raise her claim via a mechanism provided explicitly for this purpose was an error or how this process harmed her.

## 2.      Even if the Court Committed Error, the Error Was Harmless.

¶30      Even assuming the service-of-process finding and the court's refusal to permit Mother to present evidence were both erroneous, these errors were harmless. *See* ARFLP 86 ("Unless justice requires otherwise, an error in admitting or excluding evidence—or any other error by the court or a party—is not grounds for . . . disturbing a judgment or order. At every stage of the proceeding, the court must disregard all errors and defects that do not affect any party's substantial rights."). In its 27-page modification ruling, the court only referenced the service-of-process finding a total of three times: twice in its summary of the facts and history of the case, and once while evaluating "whether one parent intentionally misled the court . . . to persuade the court to give a legal decision-making or a parenting time preference to that parent." A.R.S. § 25-403(A)(7). And the service-of-process finding was only one of several instances where the court found Mother misled the court. Thus, there was ample basis for the court to conclude this statutory factor weighed against Mother even if the service-of-process finding was taken out of the equation.

¶31      Mother nonetheless contends the service-of-process finding and the court's refusal to allow her to present evidence concerning it were prejudicial because these actions caused the court to become biased against her. "We presume that a judge is impartial, and 'the party seeking recusal must prove bias or prejudice by a preponderance of the evidence.'" *In re Aubuchon*, 233 Ariz. 62, 66, ¶ 14 (2013) (quoting *State v. Carver*, 160 Ariz. 167, 172 (1989)). "A party challenging a trial judge's impartiality must overcome the presumption that trial judges are 'free of bias and prejudice.'" *Simon v. Maricopa Med. Ctr.*, 225 Ariz. 55, 63, ¶ 29 (App. 2010) (quoting *State v. Rossi*, 154 Ariz. 245, 247 (1987)). "Judicial rulings alone do not support a finding of bias or partiality without a showing of an extrajudicial source of bias or a deep-seated favoritism." *Id.* To rebut the presumption of judicial impartiality, "the challenging party must show actual bias; mere speculation about bias is not sufficient." *Emmett McLoughlin Realty, Inc. v. Pima County*, 212 Ariz. 351, 357, ¶ 24 (App. 2006).

¶32      Applying these principles here, Mother's claim of bias is fatally flawed for two reasons. First, the alleged bias did not arise from an extrajudicial source, but from rulings the court made during the proceedings. Second, Mother has not presented evidence of actual bias. She merely speculates that the "only explanation" for many of the court's findings and conclusions in the March 2019 modification ruling was that the court was improperly biased when it made the service-of-process finding and later refused to consider evidence indicating that finding was

incorrect. Thus, Mother has failed to overcome the presumption that the superior court was free from bias and has not demonstrated how she was prejudiced by the court's treatment of the service-of-process issue. Accordingly, we conclude the court's actions here did not result in reversible error.

**B.      The Superior Court Did Not Fail to Consider Evidence of Drug Use, Domestic Violence, and Neglect.**

¶33      Citing A.R.S. § 25-403.03 and -403.04—which, *inter alia*, establish presumptions against awarding a parent sole or joint legal decision-making if they abuse drugs, engage in domestic violence, or commit child abuse—Mother next argues the court abused its discretion by failing to consider evidence of: (1) Father's alleged abuse of marijuana; (2) the altercation between Bradlee and Father; and (3) child neglect by Father. Mother also asserts the superior court's "only finding" on the subject of Father's alleged drug abuse was that "Father has a medical marijuana card," and that the court improperly disregarded statements by the children concerning Father's alleged drug abuse and violent behaviors.

¶34      However, our review of the record and the court's March 2019 modification ruling reveals it considered and accounted for the allegations surrounding Father's marijuana use, as well as the evidence of Father's alleged domestic violence and child neglect. Indeed, the court made detailed findings about many of the incidents Mother claims the court failed to consider or adequately weigh, and concluded that they did not support a finding of domestic violence or drug abuse that was contrary to the children's best interests. For example, the court found there was no evidence "that Father's marijuana use presents a risk of harm to the children," that Father had received certification to purchase medical marijuana as early as December 2017, and rejected Mother's unsupported claim that Amaya frequently returned sick from Father's home due to exposure to marijuana.

¶35      The court also found the evidence surrounding the August 2017 altercation between Bradlee and Father indicated both parties were at fault, and there was no evidence that Father was violent or a danger to the children. As for the September 2017 incident that gave rise to the child-neglect allegations against Father, the court found that it was an isolated incident for which Father acknowledged fault and completed counseling services. And concerning the children's other claims of drug abuse and domestic violence by Father, the court found these allegations were either unsupported, contradicted by other evidence, or lacked

credibility given evidence that Mother coached the children. The superior court's accurate citations to the record demonstrate the record supports these findings. Thus, despite Mother's attempts to present them otherwise, her arguments concerning these issues are mostly an invitation for this court to reweigh the evidence in her favor, something we will not do. *See Castro v. Ballesteros-Suarez*, 222 Ariz. 48, 52, ¶ 11 (App. 2009) ("We will not reweigh the evidence or substitute our evaluation of the facts.").

**¶36**　　　Moreover, the evidence regarding Father's drug use, domestic violence, and child neglect must be balanced against the substantial evidence that Mother engaged in attempts to undermine the children's relationship with Father and, in doing so, caused severe emotional damage to the children. We cannot say the court abused its discretion by resolving this conflicting evidence against Mother and concluding that awarding Father sole legal-decision making and Mother supervised parenting time was in the children's best interests.

**C.　　This Court Will Not Reweigh the Evidence, and Reasonable Evidence Supports the Superior Court's Findings.**

**¶37**　　　Finally, Mother contends that the March 2019 parenting order is unsupported by the record. In doing so, Mother alleges that the court's bias against her skewed the court's findings and that it failed to consider evidence of Father's alleged drug abuse, child abuse, and neglect by Father. Mother also argues the court's findings and conclusions are odds with the findings of the court's appointed expert, Dr. Lavit, and therefore cannot be sustained**.** Mother concludes that, without these alleged errors, the court could not have found that awarding Father sole legal decision-making and Mother supervised parenting time was in the children's best interests.

**¶38**　　　But again, at their core, Mother's arguments are another request for this court to reweigh the evidence. Mother's first two claims have been addressed above. As for Mother's argument concerning Dr. Lavit's report, the court was not required to disregard its assessment of the evidence and align itself with an expert's findings and conclusions. This court has held that it is reversible error for the superior court to abandon its role as the finder of fact and defer to an expert. *DePasquale v. Superior Court*, 181 Ariz. 333, 336 (App. 1995) ("[A] court can neither delegate a judicial decision to an expert witness nor abdicate its responsibility to exercise independent judgment. The best interests of the child . . . are for the court alone to decide."); *see also Christopher K. v. Markaa S.*, 233 Ariz. 297, 301–02, ¶¶ 21–23 (App. 2013) (vacating order concerning legal decision-making

and parenting time where court incorporated expert witness' findings "by reference" and made no independent findings on a contested issue).

**¶39** As the finder of fact, the superior court was obligated to consider Dr. Lavit's report and give it the weight it was due. *See In re Gen. Adjudication of All Rights to Use Water in Gila River Sys. & Source*, 198 Ariz. 330, 340, ¶ 25 (2000) ("The trial court . . . weighs the evidence and resolves any conflicting facts, expert opinions, and inferences therefrom."). The court's numerous references to Dr. Lavit's report in the March 2019 parenting order indicate it did just that, and we will not substitute our judgment for the superior court regarding the report's evidentiary value. *Ballesteros-Suarez*, 222 Ariz. at 52, ¶ 11.

**¶40** Consistent with its statutory mandate, the superior court made detailed findings concerning each factor listed in A.R.S. § 25-403(A) and supported these findings with citations to the record. *See* A.R.S. § 25-403(B) ("In a contested legal decision-making or parenting time case, the court shall make specific findings on the record about all relevant factors and the reasons for which the decision is in the best interests of the child."). Reasonable evidence supports the court's findings. The court did not err by modifying the decree to award Father sole legal decision-making and Mother supervised parenting time.

## CONCLUSION

**¶41** We affirm the superior court's orders concerning legal decision-making and parenting time.



AMY M. WOOD • Clerk of the Court
FILED: AA

14