IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

---

DYNOMETRICS INC., *Appellant*,

*v.*

ARIZONA DEPARTMENT OF ECONOMIC SECURITY, an agency,

*and*

JULIE ENRIQUEZ, *Appellees*.

No. 1 CA-UB 22-0042
FILED 3-19-2024

---

Appeal from the A.D.E.S. Appeals Board
No.  U-1737637-001-B

**REVERSED AND REMANDED**

---

COUNSEL

Meagher + Geer P.L.L.P., Scottsdale
By Spencer T. Proffitt
*Counsel for Appellant*

Arizona Attorney General's Office, Tucson
By Jennifer Blum
*Counsel for Appellee Arizona Department of Economic Security*

Lewis Roca Rothgerber Christie LLP, Phoenix
By Heather Stanton
*Counsel for Appellee Julie Enriquez*

---

**OPINION**

Judge Daniel J. Kiley delivered the opinion of the Court, in which Vice Chief Judge Randall M. Howe and Judge Jennifer M. Perkins joined.

---

**K I L E Y**, Judge:

¶1 Dynometrics, Inc., dba Comfort Keepers ("Comfort Keepers") challenges the decision by the Appellate Services Administration Appeals Board (the "Appeals Board") of the Arizona Department of Economic Security ("ADES") awarding Julie Enriquez unemployment benefits chargeable to Comfort Keepers. Because ADES made its award without addressing the merits of Comfort Keepers' argument that Enriquez was not its employee, we reverse and remand for further proceedings.

**FACTS AND PROCEDURAL HISTORY**

¶2 This case arises from Enriquez's application for unemployment benefits after the death of "Maria" (a pseudonym), to whom Enriquez had provided caregiving services.

¶3 Maria was a recipient of health care benefits through the Arizona Health Care Cost Containment System ("AHCCCS"). AHCCCS recipients who qualify for long-term care services are allowed to select their caregivers, who receive payment for their services through providers such as Mercy Care. Recipients usually choose family members to serve as their caregivers.

¶4 When Maria became eligible for long-term care services under her Mercy Care plan, she asked that Enriquez be hired to provide caregiving services to her. Before Enriquez began providing care to Maria, she entered into a written agreement with Comfort Keepers which provided in relevant part:

> You are being offered employment by Comfort Keepers per a direct request made by [Maria] to be her/his Family Care Attendant. You also came to Comfort Keepers specifically to be hired to provide care for [Maria] and no other clients of Comfort Keepers. You understand and agree that you are not available to work for or on any other clients of Comfort Keepers and no other work will be offered to you.

Under circumstances such as this, when Comfort Keepers does not have complete control of the hiring and termination decisions of an employee; specifically when the hiring selection is made by a client not employed by Comfort Keepers, you agree to resign, quit and otherwise make yourself unavailable for any type of work with Comfort Keepers if:

- your employment should end because [Maria] no longer wants you to be her/his Family Care Attendant,
- or if [Maria] no longer qualifies for care giving services with Comfort Keepers,
- or any other reason why your employment ends with Comfort Keepers which is not a direct result of a decision made by Comfort Keepers.

I, Julie Enriquez, have read and understand the above, and I understand this will affect my rights to file for unemployment insurance against Comfort Keepers.

(Emphasis omitted.) Enriquez and a representative of Comfort Keepers signed the agreement in December 2016. Enriquez then served as Maria's caregiver, providing feeding, bathing, and other services in the home they shared. Enriquez submitted weekly timesheets to, and received paychecks from, Comfort Keepers.

¶5　　　　After Maria died in March 2021, Enriquez applied for unemployment benefits. A deputy determined that Enriquez did not qualify for benefits, explaining,

You have not shown that you attempted to adjust your grievance with your employer before you quit or that you quit for compelling personal reasons. You voluntarily left work without good cause in connection with your employment.

¶6　　　　Enriquez appealed the deputy's determination to the ADES Appeal Tribunal, *see* Ariz. Admin. Code ("A.A.C.") R6-3-1503(A), stating that she did not "quit" and "was not offered a new job" after the "patient [she] was taking care of . . . passed away."

¶7　　　　Enriquez and Kim Senff, a representative of Comfort Keepers, appeared without counsel at a hearing before the Appeal Tribunal in

September 2021. The administrative law judge (the "ALJ") began by identifying "[t]he purpose of the hearing" as

> to hear the claimant's appeal from the Determination of the Deputy . . . finding that the claimant quit the job without a good cause and was denied benefits. *That's the issue for determination today, separation from employment.* Separation from employment breaks down into some sub-issues[:] whether the claimant quit with or without a good cause; whether the claimant was discharged with or without misconduct; or whether the claimant had established a compelling personal reason to quit.

(Emphasis added.) Significantly, the ALJ did not identify whether Enriquez was an employee of Comfort Keepers as an issue to be addressed at the hearing.

¶8          The ALJ then placed Enriquez and Senff under oath and asked them questions. When he asked Enriquez if she "quit" or was "discharged," she replied, "I didn't quit and I didn't discharge [*sic*], because my client died on the 2nd of March." When the ALJ asked Enriquez if she "ask[ed] Comfort Keepers if [she] could be employed giving care to anyone else" after Maria's death, she replied in the negative, stating that she "didn't think about it at the time." Enriquez explained that she had been "in the middle of grieving" Maria's death while simultaneously "dealing with" funeral arrangements "and stuff like that." Enriquez reiterated, however, that she "had no intention at all to quit" when Maria died. There was no "other reason" for her separation from Comfort Keepers, she testified, "besides the passing of [her] patient."

¶9          During the ALJ's questioning of Enriquez, the following exchange occurred:

> ALJ:          All right. When you were working for Comfort Keepers, were you working as an employee?
>
> Enriquez:     Uh, it's kind of hard to explain because . . .
>
> ALJ:          Well, before we get into, too far into the [inaudible] just ask you some simple questions. Who cut your check, was it the client you were working for or . . .
>
> Enriquez:     Comfort Keepers.

4

> ALJ:    . . . was it Comfort Keepers? Okay.
>
> Enriquez:    I got paid through Comfort Keepers.

Although Enriquez thus did not complete her answer when the ALJ asked if she was an employee of Comfort Keepers, the ALJ never returned to that subject or invited her to complete her answer. Instead, he moved on to other subjects.

¶10    The ALJ then began to question Senff. She testified that, consistent with the terms of Enriquez's written agreement with Comfort Keepers, her engagement ended upon Maria's death. "[O]f course, her job would end then," Senff stated, "because [Maria] no longer can get the care."

¶11    Senff also testified that Maria directed her own care and selected Enriquez as her caregiver. "Mercy Care clients through AHCCCS," Senff explained, "can decide what their own direct care is gonna [*sic*] be, and then they can ask the employer to hire a specific caregiver to take care of them." The Mercy Care clients, in other words, "are actually doing the hiring." Comfort Keepers' role, Senff went on, was limited to reviewing the timesheets Enriquez submitted, issuing her checks, and billing Mercy Care. When the ALJ asked, "it sounds like you're working almost as a temporary agency employing caregivers for specific patients, is that a fair comparison?", Senff replied, "Yeah."

¶12    Before concluding the hearing, the ALJ asked Enriquez and Senff if they had "anything else [they] would like to tell [him]," to which they both answered no.

¶13    After the hearing, the ALJ issued a written decision "set[ting] aside the deputy's ruling that [Enriquez] quit this employment without good cause," determining instead that Enriquez "was discharged from this employment, but not for . . . misconduct." The ALJ made no express findings about the circumstances and conditions of Enriquez's caregiving to Maria or whether Enriquez was an employee of Comfort Keepers as opposed to an independent contractor. Instead, the ALJ assumed Enriquez's employee status, finding that she "was last employed as a [c]aregiver by the employer, a home health care agency," that the "employer hired [Enriquez] at the request of one of their patients to serve as a home health aide," and that "the employer separated [Enriquez]" when "the patient passed away." Enriquez "did not wish to quit," the ALJ found, and the "employer initiated the separation" without offering her the "option of continuing work." Accordingly, the ALJ concluded that

Enriquez "qualifies for benefits" and that the "employer's account is subject to charges for benefits paid" to Enriquez.

¶14 Comfort Keepers petitioned the Appeals Board to review the Appeal Tribunal decision, *see* A.A.C. R3-6-1504, arguing that Enriquez's caregiving services to Maria ended upon the latter's death and "through no fault of [Comfort Keepers]." Comfort Keepers also stated that Maria, not Comfort Keepers, had "direct[ed] her care" as well as the "hours and location" of services. In support of its petition, Comfort Keepers attached Enriquez's timesheets and a copy of A.R.S. § 23-613.01(A), which defines "employee."

¶15 The Appeals Board adopted the ALJ's findings of fact and legal conclusions and affirmed the Appeal Tribunal decision. The Appeals Board expressly declined to address whether Enriquez was an employee of Comfort Keepers because Comfort Keepers raised the issue in reliance on "documents not in evidence and . . . arguments that were not presented at the Appeal Tribunal hearing."

¶16 Comfort Keepers applied for appeal to this Court, arguing that Enriquez was not an employee under the statutory definition. We granted the application for appeal. We have jurisdiction pursuant to A.R.S. § 41-1993(B).

## DISCUSSION

¶17 Comfort Keepers challenges the Appeals Board's decision awarding Enriquez unemployment benefits chargeable to Comfort Keepers. "We view the evidence in the light most favorable to upholding the Appeals Board's decision and will affirm if the decision is supported by substantial evidence." *Johnson v. Ariz. Dep't of Econ. Sec.*, 247 Ariz. 351, 355, ¶ 12 (App. 2019) (citation omitted). Further, "[w]e defer to the Appeals Board's findings of fact unless they are arbitrary, capricious, or an abuse of discretion." *Id.* "An agency abuses its discretion when it misapplies the law or fails to consider the relevant facts." *Simmons v. Ariz. Dep't of Econ. Sec.*, 254 Ariz. 109, 111, ¶ 10 (App. 2022) (cleaned up).

¶18 Under Arizona's Employment Security Act, A.R.S. §§ 23-601 to -799.01, unemployment benefits may be paid to individuals who lose their jobs through no fault of their own under one of several statutorily-defined circumstances. *See* A.R.S. § 23-771. Such benefits are funded in part by contributions paid by employers. *See* A.R.S. §§ 23-612, -701, -704(A). ADES "maintain[s] a separate account for each employer," crediting each account for all contributions and other payments

6

made. A.R.S. § 23-727(A). Subject to certain statutory exceptions, unemployment benefits "paid to an individual" are "charged against the account[]" of the individual's employer. A.R.S. § 23-727(C). An employer's required contributions are initially calculated as a percentage of wages the employer pays in a calendar year but are calculated at a higher rate if unemployment benefits are determined to be chargeable against the employer's account. A.R.S. §§ 23-728, -729.

¶19        To be eligible for unemployment benefits, a claimant must, *inter alia*, have been paid wages for "insured work," which, in turn, is defined as "employment for employers." A.R.S. §§ 23-619, -771(A)(6). The term "employment" is defined as "any service of whatever nature performed by an employee for the person employing the employee." A.R.S. § 23-615(A). An "employee" is a person who "performs services for an employing unit and who is subject to the direction, rule or control of the employing unit as to both the method of performing or executing the services and the result to be effected or accomplished." A.R.S. § 23-613.01(A); *accord* A.A.C. R6-3-1723(A) (same). The statutory definition of "employee" expressly excludes an "individual who performs services as an independent contractor." A.R.S. § 23-613.01(A)(1).

¶20        "[D]etermining whether an individual who performs services is an employee" for purposes of unemployment benefits requires an "examin[ation]" of "all material evidence pertaining to the relationship between the individual and the employing unit." A.A.C. R6-3-1723(D). "The fundamental criterion" in determining the existence of an employer-employee relationship, however, is "the extent of control the principal exercises or may exercise over the agent." *Santiago v. Phx. Newspapers, Inc.*, 164 Ariz. 505, 508 (1990). Factors to consider in assessing the extent of control exercised over the worker include whether the worker "is required to comply with" the employing unit's "instructions about when, where and how he is to work"; whether "the worker is required to account for his actions" by submitting "reports bearing upon the method in which the services are performed"; and whether the employing unit determines the "hours of work" and "the amount of time the worker spends working." A.A.C. R6-3-1723(D)(2)(b), (c), (h), (j). Other factors to consider in assessing the extent of the employing unit's control are whether the worker retains the "right to perform services for others"; whether the worker may "use . . . other workers" to perform the services; and whether the worker or the employing unit supplies the necessary "tools, equipment, [and] materials." A.R.S. § 23-613.01(A).

### A. Comfort Keepers preserved its challenge to Enriquez's employee status by adequately raising the issue in its petition for review to the Appeals Board.

**¶21** Comfort Keepers argues that the Appeals Board's "determination should be reversed" because Enriquez "was not an employee of Comfort Keepers at any time," and so its "account should not be charged for her termination." At a minimum, Comfort Keepers asserts, this Court should "remand" to ADES for "additional investigation and findings of fact."

**¶22** In response, ADES and Enriquez (collectively, "Appellees") argue that this Court lacks jurisdiction to consider Comfort Keeper's challenge to Enriquez's status as its employee because Comfort Keepers purportedly failed to raise it in its petition for review to the Appeals Board.

**¶23** Appellees are correct that this Court lacks jurisdiction to consider an issue in an unemployment benefits case that was not raised in the petition for review to the Appeals Board. A.R.S. § 41-1993(B) ("An issue may not be raised on appeal that has not been raised in the petition for review before the appeals board."); *see also Barriga v. Ariz. Dep't of Econ. Sec.*, 541 P.3d 1159, 1166 ¶ 25 (2024) (holding that court lacked jurisdiction to consider issue that appellant did not raise "until he sought review from the court of appeals"). But the record does not support Appellees' contention that Comfort Keepers did not challenge Enriquez's status as its employee in its petition for review to the Appeals Board. In its petition, Comfort Keepers asserted that Maria, not Comfort Keepers, "direct[ed]" the "care" that Enriquez provided to her, as well as the "hours and location" of Enriquez's services. Comfort Keepers also attached a copy of A.R.S. § 23-613.01(A), which defines "employee" as one "who performs services . . . subject to the direction, rule or control of the employing unit." The information Comfort Keepers submitted to the Appeals Board can only be interpreted as a claim that Enriquez was not its "employee" as the term is statutorily defined. The petition thus preserved the issue for review. *See Shea v. Maricopa County*, 528 P.3d 471, 476, ¶ 20 (2023) (rejecting challenge to sufficiency of notice of appeal and noting courts' "preference to look to substance rather than to form when interpreting procedural devices"); *cf. Neal v. City of Kingman*, 169 Ariz. 133, 136 (1991) (holding that the notice of appeal of zoning decision need not "contain any 'magic words' or comply with technical rules of court pleading" but need only, "in some fashion, give fair notice of what will be challenged on appeal").

**B. Comfort Keepers did not waive its challenge to Enriquez's employee status by failing to raise the issue before the Appeal Tribunal.**

**¶24** Appellees next argue that, jurisdictional considerations aside, Comfort Keepers waived its claim that Enriquez was not its employee by failing to present it to the Appeal Tribunal.

**¶25** When the underlying facts are not in dispute, a finding that a claim or argument was waived is a legal determination that is reviewed *de novo. First Fin. Bank, N.A. v. Claassen*, 238 Ariz. 160, 164, ¶¶ 16-17 (App. 2015). For several reasons, we reject Appellees' assertion, and the Appeals Board's finding, that Comfort Keepers waived its challenge to Enriquez's employee status by failing to raise it at the hearing before the Appeal Tribunal.

**¶26** First, the parties' presentations at the hearing before the Appeal Tribunal must be viewed in light of the ALJ's opening remarks. The ALJ began the hearing by telling the parties that the reason for Enriquez's "separation from employment" was "*the issue* for determination today." (Emphasis added.) Because the ALJ identified the reason for the discontinuance of Enriquez's services as the sole issue to be addressed, neither party can fairly be faulted for focusing on that issue, to the exclusion of others, in presenting their evidence and arguments. *See Volk v. Brame*, 235 Ariz. 462, 467, ¶ 15 (App. 2014) (noting that due process requires that litigants be given an opportunity to be heard in a meaningful manner on "the issues the decision maker appears to regard as important") (citation omitted).

**¶27** Second, identifying issues and eliciting evidence at a hearing before the Appeal Tribunal is not the responsibility of the parties alone. Hearings before the Appeal Tribunal are non-adversarial proceedings whose purpose "is to gather sufficient information" on which to base "a fair and intelligent decision upon the claim." *Emp. Sec. Comm'n v. Doughty*, 13 Ariz. App. 494, 497 (App. 1970). Unlike the factfinder in an adversarial proceeding, which is typically "not responsible for developing the record," *State v. Walker*, 159 Ariz. 506, 510 (App. 1989), the ALJ in an unemployment benefits case must actively elicit evidence when necessary to create an adequately developed record, A.A.C. R6-3-50190(A)(1) ("The adjudicator must obtain all pertinent evidence reasonably available to make a non-monetary determination."); A.A.C. R6-3-1503(B) ("The Appeal Tribunal shall conduct all hearings . . . in a manner that shall ascertain the substantial rights of all the interested parties."); *Cramer v. Emp. Sec. Comm'n*, 90 Ariz.

350, 355 (1962) (holding that in "both original and appellate determinations," ADES must "actively . . . press the interested parties to produce all relevant proofs . . . and, when necessary, independ[e]ntly . . . take steps to get the facts . . . when the record made by the parties is unsatisfactory") (citation omitted). The Appeal Tribunal's obligation to "take more than a passive role in the fact finding process," *Doughty*, 13 Ariz. App. at 497, is particularly important when, as here, unrepresented parties present evidence which, though equivocal, signals the need for further inquiry into the claimant's entitlement to the relief sought.

¶28        In her testimony, for example, Enriquez did not claim to be an employee of Comfort Keepers. When the ALJ asked if she was, Enriquez replied that her relationship with Comfort Keepers was "kind of hard to explain." Enriquez's ambiguous answer should have prompted the ALJ to ask follow-up questions to clarify the nature of the parties' relationship. *See Cramer*, 90 Ariz. at 355 (noting ADES's responsibility to "get the facts to assure the correct discharge of its duty properly to allow or disallow benefits") (citation omitted). At a minimum, the ALJ should have allowed Enriquez to complete her answer rather than interrupting her to move onto a different line of questioning.

¶29        Comfort Keepers, too, presented evidence that raised doubts about Enriquez's employee status. Senff testified that Mercy Care clients such as Maria determine "what their own direct care" will be; that Maria, rather than Comfort Keepers, hired Enriquez; and that Comfort Keepers' only role was to provide billing and payroll services. Senff's testimony, which Enriquez never disputed, suggested that Comfort Keepers did not exercise the kind of control over Enriquez necessary to establish an employer-employee relationship. *See Santiago*, 164 Ariz. at 508; *see also Smith v. Ariz. Dep't of Econ. Sec.*, 128 Ariz. 21, 28 (App. 1980) ("The factor which distinguishes an independent contractor from an employee is that only the latter is subject to the control of the employing unit as to the method of performing the work."). Although Comfort Keepers did not expressly articulate the legal significance of Senff's testimony, the ALJ should have recognized its potential significance and inquired further into the nature of the parties' relationship. *See Entrepreneurs Found. v. Emp. Dep't*, 340 P.3d 768, 773 (Or. Ct. App. 2014) (stating that an ALJ's obligation to develop the record in an unemployment benefits case ensures that "relevant evidence does not go unpresented because of the ignorance or inexperience of a party") (citation omitted).

¶30        Although the ALJ completed his examination of both Enriquez and Senff by asking if they had "anything else [they] would like

to tell [him]," this single, open-ended question was hardly adequate to discharge the ALJ's duty to ensure that the record was fully developed. On the contrary, the testimony of both Enriquez and Senff should have prompted the ALJ to direct specific questions to the witnesses to "obtain . . . pertinent evidence reasonably available" to determine the nature of the relationship between the parties. *See* A.A.C. R6-3-50190(A)(1). The ALJ's failure to ask such questions left an inadequate record on which to determine Enriquez's entitlement to unemployment benefits chargeable to Comfort Keepers.

### C.    The Appeals Board abused its discretion by failing to consider Comfort Keepers' argument that Enriquez was not its employee.

¶31      After the Appeal Tribunal made its decision on an insufficient record, the Appeals Board compounded the error by finding that Comfort Keepers waived its right to dispute Enriquez's employee status. In declining to address the issue because Comfort Keepers raised it for the first time on review, the Appeals Board asserted that its function is merely "to review the record of the testimony and other evidence" presented to the Appeal Tribunal "to determine whether the [ALJ's] decision is supported by the record." The Appeals Board added that it

> does not accept additional information unless it can be shown that such information could not have been presented at the Appeal Tribunal hearing with the exercise of due diligence, or unless the facts of the case establish some unusual circumstance that justifies adding to the record. This record does not establish either ground.

The Appeals Board's narrow view of its role in the administrative process is contrary to Arizona law.

¶32      ADES is responsible for administering unemployment benefits laws with fidelity, ensuring that the law is applied as intended by the Legislature. *See Valencia Energy Co. v. Ariz. Dep't of Revenue*, 191 Ariz. 565, 575, ¶ 29 (1998) (noting the "axiom that an administrative agency . . . must execute the law as it is written"). This duty requires, among other things, that ADES award benefits only to those entitled to receive them and charge such benefits only against the accounts of employers responsible for them. Whether a claimant and an employing unit had an employer-employee relationship is, therefore, the threshold issue in every unemployment benefits case. *See Beaman v. Superior Prods., Inc.*, 89 Ariz. 119,

124 (1961) (the "threshold issue" in cases under the Employment Security Act "is whether or not there exists an employer-employee relationship").

¶33 Like the Appeal Tribunal, the Appeals Board has an obligation to base its decisions on facts established by an adequately developed record. *Cf. Prebula v. Ariz. Dep't of Econ. Sec.*, 138 Ariz. 26, 28 n.4 (App. 1983) ("[T]he appeals board is not bound by the factual findings of the appeal tribunal and may make additional or contrary findings of fact."). If, as here, the Appeals Board determines that the issue of a claimant's relationship to the employing unit was not raised or adequately addressed at the hearing before the Appeal Tribunal, the Appeals Board must take steps to remedy the deficiency in the record, either by ordering supplementation of the record on review or by remanding the case for the taking of additional evidence. *See* A.R.S. § 23-672(C); *see also* A.R.S. § 23-671(E)-(F) (authorizing the Appeals Board to "[s]et aside the decision of the appeal tribunal and remand . . . to another appeal tribunal for review and decision," "[o]rder the taking of additional evidence," or "[r]emove the proceedings to itself" and "order the taking of additional evidence").

¶34 The Appeals Board's role is not, in other words, analogous to that of an appellate court reviewing the judgment of a trial court. In judicial proceedings, it is the litigants, not the judges, who generally "define the scope of inquiry" and marshal the evidence "on which the judicial judgment is ultimately based." *Fed. Commc'ns Comm'n v. Pottsville Broad. Co.*, 309 U.S. 134, 142 (1940). The litigants are responsible for developing arguments and adducing evidence on which to stake their positions because our judicial system is adversarial in nature and thus "designed around the premise that the parties know what is best for them." *S. Point Energy Ctr. LLC v. Ariz. Dep't of Revenue*, 251 Ariz. 263, 268, ¶ 26 (App. 2021) (citations omitted), *vacated in part on other grounds* 253 Ariz. 30, 39, ¶ 38 (2022); *see also Greenlaw v. United States*, 554 U.S. 237, 243 (2008) ("In our adversary system, . . . we rely on the parties to frame the issues for decision and assign to courts the role of neutral arbiter of matters the parties present."). The nature of the adversarial system generally requires appellate courts to confine the scope of their review to the record the parties developed before the trial court. *See, e.g.*, *State v. White*, 194 Ariz. 344, 354, ¶ 44 (1999) ("Our adversarial system properly and necessarily precludes injection of new issues on appeal.").

¶35 In administrative proceedings, by contrast, the "primary responsibility for identifying and developing the issues" rests not on the parties but on the agency. *Sims v. Apfel*, 530 U.S. 103, 112 (2000). Accordingly, the principles that warrant limiting the scope of an appellate

court's review to the trial court record do not apply to the Appeals Board's review of Appeal Tribunal decisions. *See id.* at 110 (noting that the "wide differences between administrative agencies and courts" militate against "reflexively" applying principles governing "the relationship between lower and upper courts" to administrative proceedings) (citation omitted).

¶36 Recognizing that new evidence may come to light and new issues may arise over the course of an administrative proceeding, the Legislature has expressly authorized the Appeals Board to consider evidence and resolve issues in the first instance as long as it affords due process to all parties. A.R.S. § 23-674(A) ("All interested parties to a hearing before the appeal tribunal or *the appeals board* shall be given reasonable notice . . . and . . . an opportunity for hearing. The notice shall state the . . . issues involved but . . . *if subsequent amendment of the issues is necessary*, they shall be fully stated as soon as practicable, and *opportunity shall be afforded all parties to present evidence and argument with respect thereto.*") (emphasis added); A.R.S. § 23-674(D) ("The tribunal and *the appeals board may admit and give probative effect to evidence* which possesses probative value . . . . The tribunal and *the appeals board may utilize their experience, technical competence and specialized knowledge in the evaluation of the evidence presented to them.*") (emphasis added).

¶37 This is not to say, of course, that the Appeals Board and the Appeal Tribunal serve duplicative functions. Appeals Board reviews are not *de novo* proceedings, and a party dissatisfied with an Appeal Tribunal decision has no unfettered right to raise new issues or arguments on review. Instead, a party seeking review of an Appeal Tribunal decision must allege one or more of the grounds set forth in A.A.C. R6-3-1504(A). But evidence bearing on the threshold issue in unemployment benefits cases—whether the claimant was an employee of the entity whose account is to be charged—necessarily comes within the scope of that rule, which authorizes "an interested party" to petition for review of, *inter alia*, a prejudicial "abuse of discretion" or "error in law" by the Appeal Tribunal or any "[o]ther good and sufficient grounds." A.A.C. R6-3-1504(A)(1)(b), (e)-(f). The Appeals Board erred by invoking the waiver doctrine to affirm the Appeal Tribunal decision based on a plainly incomplete record instead of taking the measures authorized by statute and rule to ensure an adequate factual record. *Cramer*, 90 Ariz. at 355.

> **D.    Comfort Keepers' challenge to Enriquez's employee status cannot be resolved on the present record.**

¶38     Comfort Keepers asks us to reverse the Appeals Board's decision and hold, as a matter of law, that Enriquez was not its employee. In support of its position, Comfort Keepers asserts that A.R.S. § 23-613.01 creates a presumption that an in-home caregiver is not an employee and, therefore, is not entitled to unemployment benefits.

¶39     Section 23-613.01(A)(7) excludes from the definition of "employee" home care service providers who "contract[] with a person other than as an employee, whether directly or through an agent, to furnish . . . life assistance services . . . such as . . . personal care." By its terms, the statute applies to the relationship between the caregiver and the care recipient. Because the nature of the working relationship between Enriquez and Maria is not at issue in this appeal, Section 23-613.01 does not apply here.

¶40     In the alternative, Comfort Keepers asks us to reverse the Appeals Board's decision and determine, on the present record, that Enriquez "was not Comfort Keepers' employee" as that term is "statutorily defined." *See Simmons*, 254 Ariz. at 111, ¶ 10. For their part, Appellees urge us to affirm the Appeals Board's decision as supported by sufficient record evidence.

¶41     Enriquez bears the burden of establishing her eligibility for the benefits she claims. *See Ross v. Ariz. Dep't of Econ. Sec.*, 171 Ariz. 128, 129 (App. 1991). ("A claimant generally has the burden of proving that she is eligible for unemployment benefits."). Contrary to Appellees' assertion, the record does not contain substantial evidence to support a determination that Enriquez is entitled to benefits chargeable to Comfort Keepers. In her testimony at the hearing before the Appeal Tribunal, Enriquez did not even claim that she was a Comfort Keepers employee, asserting instead that her relationship with Comfort Keepers is "kind of hard to explain."

¶42     Moreover, the record contains no evidence that Comfort Keepers exercised any degree of control over the services Enriquez provided to Maria. The record contains no evidence, for example, that Comfort Keepers set Enriquez's work schedule or gave her instructions about when, where, or how to provide caregiving services. *See Smith*, 128 Ariz. at 28 ("Control is present when the individual is required to comply with instructions about when, where and how he is to work.") (citation omitted). Likewise, although Enriquez submitted timesheets to Comfort Keepers reflecting the dates and hours she worked, the record contains no evidence that Comfort Keepers required Enriquez to report on the services she provided. *See id.* ("If regular oral or written reports *bearing upon the*

*method in which the services are performed* must be submitted to the employing unit[,] it indicates control in that the worker is required to account for his actions.") (emphasis added) (citation omitted).

**¶43**         Admittedly, Comfort Keepers' written agreement with Enriquez uses the terms "employee" and "employment." But the language of the parties' written agreement, though relevant, is not conclusive; "[c]ontract language does not determine the relationship of the parties." *Santiago*, 164 Ariz. at 508; *see also* A.A.C. R6-3-1723(D) (noting that although "written contracts between the individual and the employing unit" may be "review[ed]" when considering the unit's "right to control" the individual, "the substance, and not merely the form[,] of the relationship must be analyzed").

**¶44**         ADES argues that Comfort Keepers conceded Enriquez's employee status by using the term "employee" to refer to Enriquez in its petition for review to the Appeals Board. We disagree. Comfort Keepers' use of the term "employee" when referring to Enriquez is not dispositive. After all, whether a worker "is an independent contractor [or an employee] is a conclusion of law," *Anton v. Indus. Comm'n of Ariz.*, 141 Ariz. 566, 569 (App. 1984) (emphasis omitted), and a party's assertions on questions of law cannot bind ADES or this Court, *see Word v. Motorola, Inc.*, 135 Ariz. 517, 520 (1983) (noting that parties "cannot stipulate as to the law . . . and bind the court") (citation omitted).

**¶45**         Although the record lacks evidence sufficient to establish Enriquez's entitlement to unemployment benefits chargeable to Comfort Keepers, we decline Comfort Keepers' invitation to resolve that issue against her. The hearing transcript reflects that the ALJ expressly told the parties that the only issue to be determined was the reason for Enriquez's "separation" from Comfort Keepers. Enriquez cannot fairly be faulted for adhering to the ALJ's directive instead of presenting evidence on a different issue, *i.e.*, whether she was an employee of Comfort Keepers to begin with. Moreover, the transcript reflects that after the ALJ asked Enriquez if she was an employee, he interrupted her before she could complete her answer. Because neither party had an adequate opportunity to present evidence on the threshold issue of whether Enriquez was an employee of Comfort Keepers, this case must be remanded for further proceedings to determine Enriquez's eligibility for benefits and whether such benefits are chargeable against Comfort Keepers' account.

**CONCLUSION**

¶46 We reverse the decision of the Appeals Board and remand for further proceedings in conformity with this decision.



AMY M. WOOD • Clerk of the Court
FILED: AA